[No. A116116. First Dist., Div. One. Jan. 25, 2008.]

WELLS FARGO BANK, N.A., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
MARY L. RICHTENBURG et al., Real Parties in Interest.

## COUNSEL

Reed Smith, James C. Martin, Joseph P. Mascovich; Thomas O. Jacob; Heller Ehrman, Barry S. Levin, Dale A. Rice and Michael E. Liftik for Petitioner.

Gregory F. Taylor, Phoebe A. Papageorgiou; Leland Chan; Covington & Burling, Sonya D. Winner, Richard A. Jones, Linda C. Goldstein and Amada J. Gourdine for American Bankers Association and California Bankers Association as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Murray & Howard, Gilmur R. Murray, Derek G. Howard, Scott J. Yundt; Cotchett, Pitre, Simon & McCarthy, Cotchett, Pitre & McCarthy, Niall P. McCarthy, Laura E. Schlichtmann; Law Offices of Daniel U. Smith and Daniel U. Smith for Real Parties in Interest.

## OPINION

**SWAGER, J.**—In this petition for writ of mandate, Wells Fargo Bank, N.A. (the Bank), challenges an order of the trial court overruling the Bank's demurrer to the second amended complaint of plaintiffs and real parties in interests Mary L. Richtenburg et al. (plaintiffs). The petition raises the issue of whether the Securities Litigation Uniform Standards Act of 1998 (Pub.L. No. 105-353 (Nov. 3, 1998) 112 Stat. 3227) (SLUSA) precludes plaintiffs' class action complaint. We conclude that it does. Accordingly, we grant the petition and issue a writ of mandate directing the trial court to vacate its order overruling the demurrer, and to issue a new order sustaining the demurrer with leave to amend.

### FACTUAL AND PROCEDURAL BACKGROUND

Mary L. Richtenburg and C. Kathleen Sipes are beneficiaries of personal trusts maintained by the Bank. They commenced the underlying action on

behalf of themselves and the following class: "all persons (and their successors) who are or were beneficiaries or successor trustees of trusts whose principal and/or income is or was managed by Wells Fargo as a corporate trustee, in which trusts Wells Fargo collected fees, proceeds or similar compensation or benefits for services provided by affiliates of Wells Fargo in connection with Wells Fargo's investment or management of trust assets, and/or collected fees, proceeds or similar compensation or benefits from third parties in connection with Wells Fargo's investment or management of trust assets."

Plaintiffs allege the Bank violated California law by (1) investing trust assets in proprietary mutual funds in order to collect various fees for itself and its affiliates, including "investment and advisory" fees; (2) investing trust assets in nonproprietary mutual funds from which the Bank and its affiliates receive undisclosed compensation; (3) implementing a "securities lending program" by which it places trust assets in a common trust fund so that it can lend securities held in the fund to third parties, charge the third parties fees and interest, and "misappropriate" from plaintiffs 40 percent of the fees and interest received; and (4) charging unreasonable fees for the preparation of tax returns. Plaintiffs allege that by engaging in these acts, the Bank has violated its duties as trustee to avoid conflicts of interest, to make investments solely in the interests of the beneficiaries, and to charge only a disclosed trustee fee for administering the trust. Plaintiffs further allege the Bank failed to provide full disclosure of its actions, including disclosure of payments received from its investments, the nature and extent of any conflicts of interest, and other material facts.

The above allegations are incorporated into and realleged in all of the causes of action, "as though fully set forth [t]herein." The complaint alleges six causes of action: (1) breach of fiduciary duty; (2) concealment; (3) violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.); (4) conversion; (5) violation of Business and Professions Code section 17200 et seq.; and (6) common count for misappropriation.

The Bank filed a general demurrer to each of the six causes of action in the second amended complaint, asserting, among other things, that the entire action was preempted by SLUSA. After the trial court overruled the demurrer, the Bank filed a petition for a writ of mandate in this court, seeking a ruling that the action was preempted by SLUSA. We summarily denied the petition. The Bank petitioned to the Supreme Court, which granted review and transferred the matter back to this court with directions to issue an order to show cause why the relief sought by the Bank should not be granted. We did so, and set a date for filing a return.

---

Discussion

## I. *Writ Relief Is Proper.*

Plaintiffs' preliminary contention is that writ relief is not appropriate where, as here, the parties are in the pleading stage. While it is true that in most cases, " 'the parties must be relegated to a review of [an order overruling a demurrer] on appeal from the final judgment . . .' [citation] . . ." (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]), a "purely legal issue" of preemption is "properly raised by demurrer and an order overruling a demurrer on that ground is properly reviewed by petition for a writ of mandate" (*Washington Mutual Bank v. Superior Court* (1999) 75 Cal.App.4th 773, 777, fn. 3 [89 Cal.Rptr.2d 560] (*Washington Mutual*)).

The sole issue before us in this writ proceeding is whether, assuming the facts alleged by plaintiffs are true, SLUSA applies.[1] Although SLUSA, often called a preemption provision, is actually a preclusion provision,[2] we nonetheless apply the rule set forth in *Washington Mutual* and conclude that writ review is proper here because the Bank's demurrer and petition similarly involve a "purely legal issue" that can be resolved on the record and briefing before us at this time. Courts have routinely invoked SLUSA to dismiss class actions at the pleading stage, and we, too, find it appropriate to make an early determination. (See, e.g., *Sofonia v. Principal Life Ins. Co.* (8th Cir. 2006) 465 F.3d 873, 875 [granted motion to dismiss on SLUSA grounds after case was removed to federal court]; *Behlen v. Merrill Lynch* (11th Cir. 2002) 311 F.3d 1087, 1089 [same].)

## II. *SLUSA Applies to Plaintiffs' Second Amended Complaint.*

### A. *Plaintiffs' second amended complaint involves misrepresentations or omissions in connection with the purchase or sale of a security.*

When reviewing a demurrer, "appellate courts generally assume that all facts pleaded in the complaint are true." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877 [6 Cal.Rptr.2d 151].) "We independently

---

[1] We grant plaintiffs' unopposed request for judicial notice filed July 26, 2007.

[2] SLUSA is a preclusion provision because it does not displace state law with federal law, but makes some state law claims nonactionable through the class action device in both federal and state courts. (See *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit* (2006) 547 U.S. 71, 87 [164 L.Ed.2d 179, 193, 126 S.Ct. 1503, 1514] (*Dabit*).) Thus, once a court determines that SLUSA applies to a given state law action, the action cannot be maintained on a class basis in either state or federal court. (*Kircher v. Putnam Funds Trust* (2006) 547 U.S. 633, 643–644 [165 L.Ed.2d 92, 104–105, 126 S.Ct. 2145, 2155].)

construe statutory law, as its interpretation is a question of law on which we are not bound by the trial court's analysis." (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 870 [13 Cal.Rptr.3d 420].)

SLUSA provides in relevant part: "Limitations on remedies [¶] (1) Class action limitations [¶] No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—[¶] (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or [¶] (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." (15 U.S.C. § 78bb(f).) Congress enacted SLUSA in response to the marginal success the Private Securities Litigation Reform Act of 1995 (PSLRA) had in achieving its goal of combating strike suits and securities class actions. (See SLUSA, Pub.L. No. 105-353, § 2(1)–(5) (Nov. 3, 1998) 112 Stat. 3227; 15 U.S.C. 78bb(f).) In enacting PSLRA, Congress targeted "perceived abuses of the class-action vehicle in litigation involving nationally traded securities." (*Dabit, supra,* 547 U.S. 71, 81.) However, "[r]ather than face the obstacles set in their path by [PSLRA], plaintiffs and their representatives began bringing class actions under state law . . . ," alleging violations of state statutory or common law. (*Id.* at p. 82.) Subsequently, Congress passed SLUSA to prevent plaintiffs from frustrating the objectives of PSLRA. (547 U.S. at p. 82.)

■ An action will be dismissed under SLUSA if it (1) is a "covered class action"; (2) is based on state law; (3) involves a "covered security"; and (4) alleges a "misrepresentation or omission of a material fact" or use of "any manipulative or deceptive device . . . in connection with the purchase or sale of a covered security." (15 U.S.C. § 78bb(f); see, e.g., *Behlen v. Merrill Lynch, supra,* 311 F.3d 1087, 1092.) A "covered class action" is a lawsuit in which damages are sought on behalf of more than 50 people. (15 U.S.C. § 78bb(f)(5)(B).) A "covered security" is one traded nationally and listed on a regulated national exchange. (15 U.S.C. § 78bb(f)(5)(E).) In determining whether an alleged misrepresentation or omission "coincides" with a securities transaction, courts look at "the gravamen"—whether the complaint, as a whole, involves an untrue statement or substantive omission of a material fact, and whether that conduct coincides with a transaction involving a covered security. (*Kutten v. Bank of America, N.A.* (E.D.Mo., Aug. 29, 2007, Civ. No. 06-0937 (PAM)) 2007 U.S.Dist. Lexis 63897, at pp. *11, *4–*5 (*Kutten*).) The court focuses on the substance of the claim, not the plaintiffs' characterization of it. (*Miller v. Nationwide Life Ins. Co.* (5th Cir. 2004) 391 F.3d 698, 702 [whether SLUSA applies "hinges on the content of the allegations—not on the label affixed to the cause of action"].)

The Supreme Court recently addressed the scope of SLUSA in *Dabit*, in which a former broker and other former or current brokers of an investment banking firm filed class action complaints alleging that the firm's biased investment recommendations induced them to retain or delay selling certain securities. (*Dabit, supra*, 547 U.S. 71, 75.) In concluding that SLUSA applied to the action, the Supreme Court in *Dabit, supra*, at page 78, reviewed similar language from part 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.) (Part 10(b)), which provides: "It shall be unlawful for any person . . . [¶] . . . [¶] (b) [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."[3] Noting that cases discussing Part 10(b) and Rule 10b-5, including *Blue Chip Stamps v. Manor Drug Stores* (1975) 421 U.S. 723 [44 L.Ed.2d 539, 95 S.Ct. 1917] (*Blue Chip Stamps*), limited the availability of private actions brought under Rule 10b-5 to purchasers and sellers of securities, and acknowledging that SLUSA's "in connection with" language is to be interpreted consistently with parallel language in Part 10(b) and Rule 10b-5, *Dabit* nonetheless held that SLUSA applied more expansively to actions brought by *holders* in addition to purchasers and sellers of securities. (*Dabit, supra*, at pp. 79–80, 86, 88–89.)

In so holding, *Dabit* emphasized that the purchaser-seller limitation in *Blue Chip Stamps* came primarily from "policy considerations," and not from an interpretation of the "in connection with" language. (*Dabit, supra*, 547 U.S. 71, 77.) *Dabit* explained: "*Blue Chip Stamps* relied chiefly, and candidly, on 'policy considerations' in adopting [the purchaser-seller] limitation. [Citation.] The *Blue Chip Stamps* Court purported to define the scope of a private right of action under Rule 10b-5—not to define the words 'in connection with the purchase or sale.' [Citation.] Any ambiguity on that score had long been resolved by the time Congress enacted SLUSA." (*Id.* at p. 84, citing *Blue Chip Stamps, supra*, 421 U.S. 723, 737, 749; see also *United States v. Naftalin* (1979) 441 U.S. 768, 774, fn. 6 [60 L.Ed.2d 624, 99 S.Ct. 2077]; *Dabit v. Merrill Lynch, Pierce, Fenner* (2d Cir. 2005) 395 F.3d 25, 39 ["The limitation on standing to bring [a] private suit for damages for fraud in connection with the purchase or sale of securities is unquestionably a distinct concept from the general statutory and regulatory prohibition [under Part 10(b)] on fraud in

---

[3] Part 10(b)'s implementing regulation, Securities and Exchange Commission rule 10b-5 (Rule 10b-5), provides: "It shall be unlawful for any person . . . [¶] (a) [t]o employ any device, scheme, or artifice to defraud, [¶] (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or [¶] (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." (17 C.F.R. § 240.10b-5 (2007).)

connection with the purchase or sale of securities"].) Thus, *Dabit* held that in interpreting the term " 'in connection with the purchase or sale of a covered security,' " it was not bound by the limitations set forth in *Blue Chip Stamps*. (*Dabit, supra,* 547 U.S. 71, 83.)

*Dabit* also noted that cases interpreting Part 10(b)'s "in connection with" language have defined it broadly. (*Dabit, supra,* 547 U.S. 71, 85.) *Dabit* cited with approval *United States v. O'Hagan* (1997) 521 U.S. 642, 656 [138 L.Ed.2d 724, 117 S.Ct. 2199], which held that the "in connection with" requirement in Rule 10b-5 is satisfied so long as the alleged misrepresentation "coincides" with a securities transaction—*"whether by the plaintiff or by someone else."* (*Dabit, supra,* at p. 85, italics added.) It also cited *SEC v. Zandford* (2002) 535 U.S. 813, 819 [153 L.Ed.2d 1, 122 S.Ct. 1899] (*Zandford*), which noted that "the SEC has consistently adopted a broad reading of the [Part 10(b)] phrase 'in connection with the purchase or sale of any security.' " *Dabit* stated: "Congress can hardly have been unaware of the broad construction adopted by both this Court and the SEC when it imported the key phrase—'in connection with the purchase or sale'—into SLUSA's core provision." (*Dabit, supra,* at p. 85.) "A narrow reading of the statute would undercut the effectiveness of [PSLRA,] and thus run contrary to [the] SLUSA's stated purpose . . . '[of] prevent[ing] certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives' of [PSLRA]." (*Id.* at p. 86.)

Here, it is undisputed that both the class and the mutual funds at issue are "covered" as defined by SLUSA. It is also clear from the complaint that the action is based on state law. Thus, the key question is whether the gravamen involves a misrepresentation or omission in connection with the purchase or sale of mutual funds.[4] We conclude it does.

The essence of plaintiffs' second amended complaint is that the Bank made misrepresentations and omitted material facts, including conflicts of interest and fees relating to the transfer of trust assets into proprietary and nonproprietary mutual funds. The complaint is replete with allegations that the Bank "failed to disclose" (i.e., omitted) details regarding fees and conflicts of interest, and that these omissions caused injury to plaintiffs. For example, plaintiffs allege the Bank invested trust assets in proprietary mutual funds in order to collect fees for itself and its affiliates, and failed to disclose "these payments and its conflicts of interests." They also allege the Bank invested

---

[4] Because the Bank does not appear to assert that plaintiffs' allegations regarding the Bank's "securities lending program" involve a security transaction, we need not address whether those allegations also fall within the scope of SLUSA.

trust assets in nonproprietary mutual funds without disclosing material details about fees and financial gain retained by the Bank as a result of these investments.

Further, each of the six causes of action hinges on harm caused by the Bank's misrepresentations. (See *Rowinski v. Salomon Smith Barney Inc.* (3d Cir. 2005) 398 F.3d 294, 300 [misrepresentation prong was satisfied where the allegations of misrepresentation served as the "factual predicate" of state law causes of action].) The first cause of action for breach of fiduciary duty includes an allegation that plaintiffs suffered injury as a result of the Bank's failure to provide "full, candid disclosure." Plaintiffs allege in their second cause of action for concealment that they were harmed because the Bank did not "honestly and fairly disclose all material facts regarding any misappropriation of trust assets and all fees and similar charges it collects from trust assets." The third cause of action for violation of the Consumers Legal Remedies Act and the fifth cause of action for unfair business practices contain allegations that the Bank engaged in deceptive practices in connection with its investments and trust services. The remaining causes of action for conversion and misappropriation are laid out in general terms and contain no specific references to misrepresentation, but the Bank's failure to provide full disclosure regarding its investments provides the bases for these claims as well.[5] Whether plaintiffs' alleged omissions are couched in terms of a fiduciary duty or claims of fraud, they are, in essence, claims that the Bank misrepresented or omitted key information about the securities transactions in which they were involved, thereby causing plaintiffs' injuries.

Cases decided after *Dabit*, which have interpreted SLUSA's "in connection with" language broadly to apply to actions alleging breaches of fiduciary duties in the context of trustee-beneficiary relationships, provide further support for our conclusion that SLUSA applies in this case. (See *Kutten, supra,* 2007 U.S.Dist. Lexis 63897; *Rabin v. JPMorgan Chase Bank, N.A.* (N.D.Ill., Aug. 3, 2007, No. 06-C-5452) 2007 U.S.Dist. Lexis 57437 (*Rabin*); *Spencer v. Wachovia Bank, N.A.* (S.D.Fla., May 10, 2006, No. 05-81016-CIV-RYSKAMP/VITUNAC) 2006 U.S.Dist. Lexis 52374 (*Spencer*); *Siepel v. Bank of America, N.A.* (E.D.Mo. 2006) 239 F.R.D. 558 (*Siepel*).) In all of these cases, the plaintiffs, as in this case, were beneficiaries of fiduciary accounts for which the defendant banks were trustees. (*Kutten,* at p. *1; *Rabin,* at p. *1; *Spencer,* at p. *1; *Siepel,* at p. 561.) The plaintiffs alleged the banks wrongfully transferred trust assets into proprietary mutual

---

[5] In any event, it is immaterial that the causes of action for conversion and misappropriation do not themselves contain allegations of misrepresentation. (See *Professional Management Associates v. KPMG LLP* (8th Cir. 2003) 335 F.3d 800, 803 [because allegations of misrepresentation made elsewhere in the complaint were "incorporated by reference" into the cause of action for negligence, SLUSA applied despite there being no allegation of misrepresentation contained within the negligence cause of action].)

funds without considering other alternatives, and failed to disclose the conflicts of interest and the fees resulting from those securities transactions. (*Kutten*, at p. *1; *Rabin*, at p. *7; *Spencer*, at p. *1; *Siepel*, at p. 561.) The courts uniformly concluded that SLUSA applied because the alleged misrepresentation or omission "coincided" with a securities transaction.[6] (*Kutten*, at p. *6; *Rabin*, at p. *6; *Spencer*, pp. *7, *8; *Siepel*, at pp. 568–569.)

While the above cases are not binding on this court (see *Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 782 [67 Cal.Rptr.2d 357] [state courts not bound by federal district and circuit court decisions]), their reasoning and analyses are consistent with *Dabit*'s broad construction of the "in connection with" language, and with SLUSA's stated purpose of "prevent[ing] certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of PSLRA. (SLUSA, Pub.L. No. 105-353, § 2(5) (Nov. 3, 1998) 112 Stat. 3227.) In addition, given the marked factual similarities between the above cases and the present case, we find them persuasive.[7]

Plaintiffs cite *Gavin v. AT & T Corp.* (7th Cir. 2006) 464 F.3d 634 (*Gavin*), a post-*Dabit* case, to support their position, but it is distinguishable from the allegations before us. In *Gavin*, shareholders of MediaOne, a company that was acquired by AT&T, brought a state court action against AT&T and its consultant (defendants), alleging the defendants fraudulently failed to inform MediaOne shareholders that they had the option of exchanging MediaOne shares with AT&T shares, free of charge. (*Gavin, supra*, at pp. 637–638.) According to the complaint, the defendants only informed MediaOne shareholders of a fee-based option for exchanging the shares. (*Ibid.*) *Gavin* held SLUSA did not apply because the alleged fraud of failing to inform MediaOne shareholders of the free option occurred long after the securities transaction, i.e., the merger, took place. (464 F.3d at p. 638.) *Gavin* concluded that the connection between the defendants' conduct and the

---

[6] Many other post-*Dabit*, federal district court cases have found SLUSA applicable where the allegations involved breaches of fiduciary duties, breach of contract, unjust enrichment or state statutory violations based on alleged failures to disclose. (E.g., *Dommert v. Raymond James Financial Services, Inc.* (E.D.Tex., Mar. 29, 2007, No. 1:06-CV-102) 2007 U.S.Dist. Lexis 22876; *Broadhead Ltd. Partnership v. Goldman, Sachs & Co.* (E.D.Tex., Mar. 26, 2007, Civ. A. No. 2:06-CV-009) 2007 U.S.Dist. Lexis 21302; *Beckett v. Mellon Investor Services, LLC* (W.D.Wn., Nov. 8, 2006, No. C-06-5245-FDB) 2006 U.S.Dist. Lexis 81911; *Felton v. Morgan Stanley Dean Witter & Co.* (S.D.N.Y. 2006) 429 F.Supp.2d 684.)

[7] In contrast, we do not find persuasive pre-*Dabit* cases on which plaintiffs rely, including *Strigliabotti v. Franklin Resources, Inc.* (N.D.Cal. 2005) 398 F.Supp.2d 1094 and *Burns v. Prudential Securities, Inc.* (N.D.Ohio 2002) 218 F.Supp.2d 911, 915, which did not apply the broad construction of the "in connection with" language that *Dabit* now requires us to apply.

securities transaction was too attenuated to satisfy even the post-*Dabit*, broadly interpreted "in connection with" requirement. (*Gavin, supra*, at pp. 638–639.)

■ In contrast, here, the Bank's alleged misrepresentations and omissions occurred contemporaneously with the security transaction of investing the trust's assets into proprietary and nonproprietary mutual funds. The Bank's alleged fraudulent conduct therefore "coincided" with a security transaction. These facts set this case apart from *Gavin*, and bring this case within SLUSA's "in connection with" requirement. (See *Rabin, supra*, 2007 U.S.Dist. Lexis 57437, at p. *22, fn. 5 [found *Gavin* to be inapposite in a case factually similar to the present case in which plaintiffs alleged the defendants invested proceeds from trust accounts into defendants' proprietary mutual funds despite better suited options].)

*LaSala v. Lloyds TSB Bank, PLC* (S.D.N.Y. 2007) 514 F.Supp.2d 447 (*LaSala I*), *LaSala v. Bank of Cyprus Public Co. Ltd.* (S.D.N.Y. 2007) 510 F.Supp.2d 246 (*LaSala II*), and *LaSala v. UBS, AG* (S.D.N.Y. 2007) 510 F.Supp.2d 213 (*LaSala III*) (collectively referred to as *LaSala*), are post-*Dabit* cases in which the court held SLUSA did not apply. Like *Gavin*, they are inapposite. In all three *LaSala* cases, which arose from the same facts, the complaints alleged that a company officer stole from the company by transferring tens of millions of dollars of the company's money into his own personal account. (*LaSala I, supra*, at p. 452; *LaSala II, supra*, at p. 249; *LaSala III, supra*, at p. 218.) He and another officer also allegedly caused the price of company shares to rise by misleading the public into believing the company was experiencing rapid growth. (*LaSala I, supra*, at p. 450; *LaSala II, supra*, at p. 249; *LaSala III, supra*, at pp. 216–217.) The officers were indicted and the company filed for bankruptcy protection. (*LaSala I, supra*, at p. 450; *LaSala II, supra*, at pp. 249–250; *LaSala III, supra*, at p. 217.)

The plaintiffs, cotrustees of a liquidation trust created by the bankruptcy court, brought actions against three banks, on behalf of the trust beneficiaries, which included former investors of the company, and the successor company. (*LaSala I, supra*, 514 F.Supp.2d 447, 451; *LaSala II, supra*, 510 F.Supp.2d 246, 250; *LaSala III, supra*, 510 F.Supp.2d 213, 217.) The complaints alleged the defendant banks aided and abetted the officers' breach of fiduciary duty by allowing them to "launder" money, breached their contracts with the company by failing to inform the company of the officers' money laundering, and failed to exercise ordinary care in the handling of their accounts. (*LaSala I, supra*, at pp. 451–453; *LaSala II, supra*, at pp. 250–253; *LaSala III, supra*, at

pp. 218–220.) *LaSala* held SLUSA did not apply to these allegations, which involved "straightforward theft" and arose from the fraudulent acts of the officers, not of the defendant banks. (*LaSala II, supra,* at pp. 275–276; see also *LaSala I, supra,* at pp. 476–479; *LaSala III, supra,* at pp. 243–244.)

In contrast to the allegations in *LaSala*, plaintiffs here have not alleged any "straightforward theft." Their allegations are confined to allegations that the Bank itself engaged in a scheme of investing trust assets in certain mutual funds, through misrepresentations and omissions regarding the mutual funds' fees and expenses.

B. *The "in connection with" requirement is met even though plaintiffs have no investment authority.*

Plaintiffs contend that SLUSA does not apply to their action because the "in connection with" requirement is met only where the plaintiffs have investment authority and are induced, by way of a defendant's misrepresentations or omissions, to make certain investment decisions that harm them. They contend that because, as trust beneficiaries, in contrast to purchasers, sellers or holders of securities, they lack investment authority, the "in connection with" requirement cannot be met. Plaintiffs rely on a line of cases beginning with *O'Brien v. Continental Illinois Nat. Bank & Trust* (7th Cir. 1979) 593 F.2d 54, 60 (*O'Brien*), in which the Seventh Circuit found that the plaintiffs had no private right of action under Rule 10b-5 because they had "no voice" in the investment decisions.

In *O'Brien*, the plaintiffs who, as beneficiaries of various pension funds, had no investment authority, brought an action under Rule 10b-5 against the trustee, Continental Bank (Continental), for investing the funds' assets in securities of several companies to which it had loaned substantial amounts of money. (*O'Brien, supra,* 593 F.2d 54, 57–58.) The Seventh Circuit affirmed the district court's dismissal of the causes of action that alleged that Continental's concealment of its conflict of interest violated Rule 10b-5. (*O'Brien, supra,* at p. 63.) Rejecting the argument that the plaintiffs would have revoked the trust or agency agreements with Continental if they had known the truth, and that they were essentially forced to retain the securities, *O'Brien* held: "These retention claims are squarely within *Blue Chip Stamps* . . . in which the Court adopted the rule . . . that only purchasers and sellers of securities are entitled to maintain actions for violation of [Part] 10(b) and Rule 10b-5. . . . [¶] It is irrelevant that, as plaintiffs argue, they ultimately sold their securities. A plaintiff may not bring his retention claim within the [rule adopted by *Blue Chip Stamps*] by selling his securities before he sues. The failures to disclose were not 'in connection with' the ultimate sales." (*Id.* at p. 58, citations omitted.) *O'Brien* further held that even if

the plaintiffs were considered "purchasers" because Continental purchased securities on their behalf, the policy considerations set forth in *Blue Chip Stamps* required dismissal. (*O'Brien, supra*, at p. 59.)

Thus, *O'Brien*'s dismissal of the causes of action under Rule 10b-5 was based not on an interpretation of the "in connection with" language, but on the "policy considerations" underlying *Blue Chip Stamps*'s decision to limit the private right of action to purchasers and sellers of securities. For the same reasons *Dabit* declined to follow the purchaser-seller limitation that *Blue Chip Stamps* placed on actions brought under Rule 10b-5, we decline to apply *O'Brien*'s holding to our determination of whether the "in connection with" language in SLUSA is met in this case. (See *Dabit, supra*, 547 U.S. 71, 84 [not bound by *Blue Chip Stamps* limitation, which was based on "policy considerations" and not on an interpretation of the "in connection with" language].)

*O'Brien* is also inapposite because it is a pre-*Zandford* and pre-*Dabit* case that did not acknowledge that the "in connection with" language is to be interpreted broadly, or that the requirement is met where the alleged misrepresentation merely "coincides" with a securities transaction. (See *Dabit, supra*, 547 U.S. 71, 85; *Zandford, supra*, 535 U.S. 813, 819.) *Dabit*'s holding that the identity of the plaintiff is immaterial in interpreting the "in connection with" language provides further support for the conclusion that plaintiffs' lack of investment authority does not affect the determination of whether SLUSA applies. (See *Dabit, supra*, at pp. 85, 89.)[8] In addition, we note that *Blue Chip Stamps* and its progeny have been viewed as creating a standing requirement, i.e., that an individual must be a purchaser or a seller of a security in order to bring an action under Rule 10b-5. (*Dabit, supra*, at p. 79 ["later cases treated [the purchaser-seller limitation] as a standing requirement . . ."].) Thus, we will not apply *O'Brien* to this case for the additional reason that the issue of whether an individual has standing to bring an action under Rule 10b-5 is immaterial to the question of whether a defendant's alleged misrepresentation or omission was "in connection with the purchase or sale of a covered security" under SLUSA.[9]

---

[8] Plaintiffs assert that *Dabit* did *not* hold that the identity of the plaintiff is immaterial, and that it merely stated that the distinction between *holders* of securities, and *purchasers or sellers* of securities, was irrelevant. We disagree. *Dabit* held more generally that "the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities . . . ," and that we must look at whether the *defendant's conduct* (an alleged misrepresentation or omission) coincided with a security transaction. (*Dabit, supra*, 547 U.S. 71, 89.)

[9] *Zandford* also belies plaintiffs' contention that, in the context of SLUSA, they must have possessed investment authority for the "in connection with" requirement to be satisfied. Despite the customer's lack of investment authority in *Zandford*, the Supreme Court held that the "in connection with" language was met. (*Zandford, supra*, 535 U.S. 813, 815, 825.)

C.   *Finding SLUSA preclusion in this case does not displace an area of law traditionally reserved to the states.*

Plaintiffs also contend that SLUSA does not apply because the trustee-beneficiary relationship has traditionally been the province of state law. As noted, however, SLUSA is not a preemption provision by which federal law displaces state law. Instead, it precludes all state law claims pursued on a class basis in any court, as long as its requirements for preclusion are met. To that end, *Dabit* held the presumption that " 'Congress does not cavalierly pre-empt state-law causes of action . . .' [citation] . . . [has] less force here than in other contexts because SLUSA does not actually pre-empt any state cause of action. It simply denies the plaintiffs the right to use the class-action device to vindicate certain claims. . . . [¶] Moreover, the tailored exceptions to SLUSA's pre-emptive command demonstrate that Congress did not by any means act 'cavalierly' here." (*Dabit, supra,* 547 U.S. 71, 87.) "Finally, federal law, not state law, has long been the principal vehicle for asserting class-action securities fraud claims." (*Id.* at p. 88.) State law can be applied to this case to regulate the conduct of the Bank as long as it is not done on a class basis. Our conclusion that SLUSA applies to the class action will not displace an area of law traditionally reserved to the states.

D.   *Plaintiffs may amend their second amended complaint to assert state claims for a group of fewer than 50 plaintiffs or exclude allegations that trigger SLUSA preclusion.*

Because plaintiffs are free to pursue their claims on an individual basis, and because some of their allegations, including their allegations regarding unreasonable charges for the preparation of tax returns, are outside the scope of SLUSA, plaintiffs may amend the second amended complaint to (1) assert state claims for a group of fewer than 50 plaintiffs; or (2) exclude allegations that trigger SLUSA preclusion. In allowing amendment, we adopt the reasoning of *U.S. Mortg., Inc. v. Saxton* (9th Cir. 2007) 494 F.3d 833, 843, which held: "[D]istrict courts that have confronted the issue [of whether amendment should be allowed after SLUSA is found to apply] have also recognized the inequity of dismissing otherwise valid and viable state law claims on the ground that plaintiff pled—perhaps inadvertently—a cause of action that may [trigger SLUSA]. In light of the statutory silence on the issue in SLUSA, the existence of competing policy rationales, and the fact that the granting or denial of leave to amend is ordinarily a matter left to the discretion of the district court, we hold that SLUSA does not prohibit amendment of the complaint after removal."[10]

---

[10] The Bank concedes that amendment should be allowed. It states: "On remand, plaintiffs then should be compelled to decide whether to (1) amend the complaint and abandon the

## Disposition

The petition is granted. Let a peremptory writ issue directing respondent superior court to vacate its order overruling defendant Wells Fargo Bank's demurrer in *Mary L. Richtenburg v. Wells Fargo Bank, N.A.* (Super. Ct. S.F. City and County, No. 05-444516) and to issue a new and different order sustaining the demurrer with leave to amend. The parties shall bear their own costs incurred in this writ proceeding. (See Cal. Rules of Court, rule 8.490(m)(2).)

Stein, Acting P. J., and Margulies, J., concurred.

A petition for a rehearing was denied February 21, 2008, and the petition of real parties in interest for review by the Supreme Court was denied April 30, 2008, S161466. Baxter, J., and Corrigan, J., did not participate therein.

---

allegations that trigger SLUSA, or (2) amend the complaint by retaining those allegations but making it clear that they are pursuing those claims on an individual, not a class-wide, basis."