[No. B219501. Second Dist., Div. Three. Jan. 20, 2011.]

DRAKE PRICE, Plaintiff and Appellant, v.
STARBUCKS CORPORATION, Defendant and Respondent.

COUNSEL

Harris & Ruble, Alan Harris and Jonathan Ricasa for Plaintiff and Appellant.

Akin Gump Strauss Hauer & Feld, Rex S. Heinke, Gregory W. Knopp and Katharine J. Galston for Defendant and Respondent.

OPINION

ALDRICH, J.—Plaintiff and appellant Drake Price worked at Starbucks as an entry-level barista for approximately 13 scheduled shifts before he was fired. He sued Starbucks Corporation (Starbucks) on behalf of himself and a putative class, seeking to recover unpaid wages, penalties, and damages, alleging Labor Code violations, including failure to timely pay wages upon termination, failure to pay an additional hour of reporting time pay on the day he was fired, and failure to issue a wage statement that complied with the Labor Code. Starbucks challenged the pleadings, and the trial court dismissed the noncompliant wage statement cause of action and granted a motion to strike the allegations that Price was entitled to continuing wages because Starbucks failed to timely pay wages upon termination. Starbucks then

successfully moved for summary judgment on the remaining causes of action in the complaint, which focused on Starbucks's purported failure to pay Price an extra hour of reporting time pay on the day he was fired. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts Alleged in the Complaint*[1]

Price was an entry-level employee at Starbucks from October 22, 2007, through November 16, 2007, when he was terminated.[2] Price was scheduled to work November 11, but he called the store and informed a coworker that he was unable to work. Price called the store later that day, and he was informed by a coworker that he was not scheduled to work for the rest of the week. Price's coworker told him to call the branch manager regarding his schedule. The next day, the branch manager left Price a voice mail message stating that Price should "come to the store on November 16, 2007, to have a talk."

On November 16, Price arrived at the store, and the branch manager informed Price that he "was letting him go." Price received two paychecks; one paycheck for the work he performed up until November 10, and another paycheck for two hours of reporting time pay for the meeting on November 16. The earnings statements attached to these paychecks are exhibits to the complaint.

Price, on behalf of himself and a putative class, alleged causes of action for (1) violation of Labor Code section 203[3] seeking continuing wages for failure to timely pay wages upon discharge, alleging he was fired on November 11 when he was taken off the schedule; (2) violation of sections 204 and 1198 for failure to pay all reporting time pay due him for the November 16th meeting; (3) violation of section 226, subdivision (a) for noncompliant wage statements; and (4) violation of the unfair competition law (UCL) (Bus. &

---

[1] The allegations are taken from the second amended complaint. Price sought leave to file a third amended complaint which expanded the definition of the putative class to include all California employees who did not receive proper reporting time pay at termination. The trial court granted the motion, deemed it filed on the date of the summary judgment hearing, and the parties stipulated to having the summary judgment apply to the third amended complaint.

[2] For purposes of reviewing the demurrer, we assume the truth of these allegations. (*Wells Fargo Bank, N.A. v. Superior Court* (2008) 159 Cal.App.4th 381, 385 [71 Cal.Rptr.3d 506].)

[3] Unless otherwise indicated, all further statutory references are to the Labor Code.

Prof. Code, § 17200) based upon these alleged Labor Code violations. Price also alleged a fifth cause of action to recover civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA) (§ 2699).

### 2. *Dismissal of the Wage Statement Cause of Action and Motion to Strike Allegations Related to Untimely Payment of Wages upon Discharge*

Starbucks filed a demurrer to Price's third cause of action for noncompliant wage statements, and moved to strike allegations in the first and fifth causes of action seeking continuing wages under section 203 for allegedly failing to timely pay Price upon his termination (§ 201).

The trial court sustained the demurrer without leave to amend and granted the motion to strike. Thus, the complaint and the remaining causes of action alleged therein were based upon Starbucks's alleged failure to pay Price (and the putative class he sought to represent) the appropriate amount of reporting time pay on the date of termination.

### 3. *Motion for Summary Judgment on Reporting Time Pay Causes of Action*

Starbucks moved for summary judgment on the complaint, contending Price's causes of action (first, second) based upon the failure to pay an additional hour of reporting time pay failed as a matter of law, and the remaining causes of action (fourth, fifth) were derivative of the reporting time pay causes of action. The following evidence was presented in support of, and in opposition to, the summary judgment motion.

Price was not scheduled to work a shift on November 16, 2007, but he agreed to come to the store for the scheduled meeting. Price testified the meeting lasted about 45 seconds. For attending this meeting, Price received two hours of regular pay at his hourly rate.

Price worked different hours during his employment at Starbucks. His shifts ranged from approximately four hours to eight hours. Price submitted a declaration in which he "averaged" his shifts, and stated the average was 6.31 hours. In reviewing his time records to determine the average hours of his shifts, Price noticed an error in which he did not clock in when he started work, and he claimed to have worked 43 minutes for which he was not paid.

The trial court granted summary judgment, concluding that under the applicable wage order, Price was entitled to receive, and did receive, the minimum two hours of reporting time, not the average hours of his shifts. The trial court determined the 43 minutes for which Price had not been paid was immaterial because Price had not alleged the underpayment of wages in the operative complaint. Judgment was entered, and Price timely appealed.

## DISCUSSION

1.  *The Trial Court Properly Sustained the Demurrer and Did Not Abuse Its Discretion in Granting the Motion to Strike Allegations in the Complaint*

    a.  *Standards of Review*

On appeal from a judgment dismissing an action following the sustaining of a demurrer, we consider the legal sufficiency of the complaint. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) "Because a demurrer tests the legal sufficiency of a complaint, the plaintiff must show the complaint alleges facts sufficient to establish every element of each cause of action. If the complaint fails to plead, or if the defendant negates, any essential element of a particular cause of action, this court should affirm the sustaining of a demurrer. [Citation.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 [96 Cal.Rptr.2d 354].) We review de novo "whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]" (*Ibid.*)

A purely legal issue raised on demurrer is reviewed de novo. (*American Internat. Group, Inc. v. Superior Court* (1991) 234 Cal.App.3d 749, 755 [285 Cal.Rptr. 765].)

An order striking all or part of the pleading under Code of Civil Procedure section 435 is reviewed following the entry of final judgment for abuse of discretion. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1282 [45 Cal.Rptr.3d 222].)

b. *Price Failed to Allege an Injury Arising from the Allegedly Noncompliant Wage Statements*

Price alleged Starbucks's wage statements did not comply with the requirements of subdivision (a) of section 226.[4] He, and the class he seeks to represent, were allegedly injured because they have been deprived of the requisite information on their wage statements. This lack of information "caused confusion and possible underpayment of wages due," required the putative class to file this lawsuit, and forced the putative class to attempt to reconstruct their time and pay records. Additionally, Price alleges "many of Defendant's employees suffer from dyslexia and/or dyscalculia and/or are illiterate," and these employees were allegedly injured by the noncompliant wage statements. Price and the putative class seek damages suffered as a result of these injuries.[5]

To recover damages under section 226, subdivision (e), an employee must suffer injury as a result of a knowing and intentional failure by an employer to comply with the statute.[6] Price has not alleged a cognizable injury.

The injury requirement in section 226, subdivision (e), cannot be satisfied simply because one of the nine itemized requirements in section 226, subdivision (a) is missing from a wage statement. (See *Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1306 [105 Cal.Rptr.3d 443]; see also *Elliot v. Spherion Pacific Work, LLC* (C.D.Cal. 2008) 572 F.Supp.2d 1169, 1181.) By employing the term " 'suffering injury,' " the statute requires that

---

[4] Section 226, subdivision (a) sets forth nine itemized requirements for a wage statement. Price contends Starbucks's wage statements do not comply with three of the requirements because the statements do not list total hours worked, net wages earned, and all applicable hourly rates. Price contends "total" means grand total, the sum of the regular and overtime rates. He also contends that Starbucks's use of "amount paid," following gross pay and deductions does not comply with the requirement to show "net wages." Finally, Price contends the earnings statement lists the regular rate of pay, but fails to list the overtime rate of pay, requiring him to ensure that the overtime rate is one and one-half his regular rate of pay. Because we address the failure to plead an injury, we do not reach these issues.

[5] Price does not seek injunctive relief under section 226, subdivision (g), nor could he because, as a former Starbucks employee, he lacks standing.

[6] Section 226, subdivision (e) states: "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

an employee may not recover for violations of section 226, subdivision (a) unless he or she demonstrates *an injury* arising from the missing information. (*Jaimez v. Daiohs USA, Inc., supra*, at pp. 1306–1307.) Thus, the deprivation of that information, standing alone, is not a cognizable injury.[7] (*Jaimez*, at pp. 1306–1307.)

Price alleged a "mathematical injury," that required him to add up his overtime and regular hours and to ensure his overtime rate of pay is correct, but the allegedly missing information from Price's wage statement is not the type of mathematical injury that requires " 'computations to analyze whether the wages paid in fact compensated [him] for all hours worked.' [Citation.]" (*Jaimez v. Daiohs USA, Inc., supra*, 181 Cal.App.4th at p. 1306.) Price only speculates on the "possible underpayment of wages due," which is not evident from the wage statements attached to the complaint. Price's complaint, therefore, is distinguishable from complaints of the plaintiffs in the cases he relies on who sufficiently alleged (and presented evidence) of an injury arising from inaccurate or incomplete wage statements, which required those plaintiffs to engage in discovery and mathematical computations to reconstruct time records to determine if they were correctly paid. (See, e.g., *Wang v. Chinese Daily News, Inc.* (C.D.Cal. 2006) 435 F.Supp.2d 1042, 1050, affd. on other grounds (9th Cir. 2010) 623 F.3d 743 [wage statements inaccurately listed hours worked and omitted hourly wage]; see also *Ortega v. J.B. Hunt Transport, Inc.* (C.D.Cal. 2009) 258 F.R.D. 361, 373–374 [wage statements failed to include hours worked and applicable hourly rate]; *Perez v. Safety-Kleen Systems, Inc.* (N.D.Cal. 2008) 253 F.R.D. 508, 517 [inaccurate hours on wage statements]; *Jaimez v. Daiohs USA, Inc., supra*, at pp. 1305–1306 [wage statement listed " 'total hours paid,' " which left employees unable to determine if they were paid for all hours worked]; *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 956, 961 [35 Cal.Rptr.3d 243] [inaccurate hours on wage statements].) Price's simple math is not based upon any allegation that the information is inaccurate.[8]

*Zavala v. Scott Brothers Dairy, Inc.* (2006) 143 Cal.App.4th 585, 591–592 [49 Cal.Rptr.3d 503], upon which Price also relies, did not address the injury requirement under section 226, subdivision (e). Our citation in that case to

---

[7] We granted Starbucks's request for judicial notice of the legislative history of section 226, which confirms the legislative intent that, to recover damages, employees must suffer an injury resulting from the missing or inaccurate information. (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 3731 (1975–1976 Reg. Sess.) as amended May 21, 1976.)

[8] Price alleged Starbucks employees suffer from disabilities, but he does not allege he suffers from the disability or any connection between the disability and an alleged injury arising from the purportedly missing information from the earnings statements.

an opinion letter from the California Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE), addressed questions related to the applicable standard in section 226, subdivision (a) for an itemized wage statement. (*Zavala v. Scott Brothers Dairy, Inc., supra*, at pp. 591–592; DLSE Opn. Letter No. 2002.05.17 (May 17, 2002) p. 3; see also *Cicairos v. Summit Logistics, Inc., supra*, 133 Cal.App.4th at p. 955.)

Price has not alleged an injury arising from the purportedly missing information from his earnings statements in order to seek damages under section 226, subdivision (e). The demurrer was properly sustained.

> c. *Price's Complaint Alleged He Received His Final Paycheck on the Day He Was Discharged and Therefore Has No Continuing Wages Claim*

Price seeks additional pay under the theory that he should have been paid his final paycheck on November 11, 2007, when he was taken off the schedule, instead of November 16, 2007, when he was fired. We find no abuse of discretion in striking the allegations in the complaint to support this theory.

Section 201 provides that if an employer discharges an employee, wages earned and unpaid at the time of the discharge are due and payable immediately. (§ 201, subd. (a).) The willful failure to pay wages subjects an employer to continuing wage penalties. (§ 203.)

Price alleged he was discharged on November 16, 2007, the same day he received his last paycheck. The trial court accepted that date and rejected Price's alternative dates. Price does not allege his coworker told him he was fired on November 11. Nor does he allege the branch manager left a voice mail message that he was fired; the voice mail message scheduled a meeting on November 16 to "have a talk." Price took himself off the schedule on November 11, but he does not allege that he quit on that day. Thus, based upon the pleadings, Price's employment at Starbucks ended on November 16, the day he was fired.

We reject Price's contention that his removal from the schedule was an indefinite layoff.[9] This legal theory was not alleged and contradicts the

---

[9] We granted Price's request for judicial notice of the dictionary definition of "total," to support his noncompliant wage statement cause of action and "layoff" to support his continuing wage claim arising from failure to timely pay wages upon discharge, in addition to a DLSE document entitled "History of California Minimum Wage," and two DLSE opinion letters addressing the obligation of an employer to pay wages at the time of a temporary layoff, and the obligation to pay wages during a shutdown. None of these documents is relevant to resolve this appeal.

allegations that he was terminated on November 16, 2007. Thus, the allegations for continuing wages based upon a violation of section 201, as alleged in the first and fifth causes of action, were properly stricken from the complaint.

Price has not presented any possibility that he could amend his complaint to cure these pleading defects. (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) Instead, Price contends, at a minimum, he can amend to allege an entirely new cause of action seeking 43 minutes of unpaid wages, for which he would be entitled to continuing wages under section 203. This allegation, even if accepted as true, would not cure the pleading defects to revive either the third cause of action for noncompliant wage statements, or the first and fifth causes of action that are based upon the failure to timely pay wages upon termination.

2. *Summary Judgment Was Properly Granted on Price's Complaint Seeking Additional Reporting Time Pay and Penalties*

a. *Standard of Review*

Price's complaint seeks damages and penalties because Starbucks should have paid him for 3.3 hours at his regular rate of pay, the average of his scheduled shifts, for reporting on the day he was fired, instead of for two hours. Price's summary judgment appeal is reviewed de novo. (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618 [101 Cal.Rptr.3d 2, 218 P.3d 262]; *City of Saratoga v. Hinz* (2004) 115 Cal.App.4th 1202, 1212 [9 Cal.Rptr.3d 791].)

Our task is to determine the Industrial Welfare Commission's intent in promulgating the reporting time pay regulation. The rules of statutory construction apply to the interpretation of regulations. (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898 [95 Cal.Rptr.3d 183, 209 P.3d 89]; *County of Kern v. State Dept. of Health Care Services* (2009) 180 Cal.App.4th 1504, 1512 [104 Cal.Rptr.3d 43].) The chosen words of the regulation are the most reliable indicator of intent. (See *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 338 [33 Cal.Rptr.2d 109, 878 P.2d 1321].) We give the regulatory language its plain, commonsense meaning. If possible, we must accord meaning to every word and phrase in a regulation, and we must read regulations as a whole so that all of the parts are given effect. (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 288–289 [93 Cal.Rptr.3d 369, 206 P.3d 739].) If the

regulatory language is clear and unambiguous, our task is at an end, and there is no need to resort to canons of construction and extrinsic aids to interpretation. (*California School Employees Assn. v. Governing Board, supra,* at p. 340.)

> ### b. Starbucks Complied with the Reporting Time Pay Regulation That Required a Two-hour Payment, Not an Average-shift Payment

Section 5(A) of wage order No. 5-2001 states: "Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage." (See Cal. Code Regs., tit. 8, § 11050, subd. 5(A).)

■ The use of the disjunctive "or" in this regulation, is used in the ordinary sense, suggesting alternatives. (See *In re Jesusa* (2004) 32 Cal.4th 588, 622 [10 Cal.Rptr.3d 205, 85 P.3d 2].) If an employee is required to work, reports to work, and is not put to work or does not work half of the employee's usual or scheduled day's work, the employee is paid a half-shift reporting wage not to exceed four hours. (Cal. Code Regs., tit. 8, § 11050, subd. 5(A).) If an employee is not scheduled to work or does not expect to work his usual shift, but must report to work for a meeting, the employee falls into the regulatory category of those employees called to work on their day off for a scheduled meeting. Price was entitled to the minimum payment, which is what he received.[10]

The DLSE states the primary purpose of the reporting time pay regulation "is to guarantee at least partial compensation for employees who report to work expecting to work a specified number of hours, and who are deprived of that amount because of inadequate scheduling or lack of proper notice by the employer." (DLSE Operations and Procedures Manual (1989) § 10.88; see also *California Manufacturers Assn. v. Industrial Welfare Com.* (1980) 109 Cal.App.3d 95, 112 [167 Cal.Rptr. 203] [purpose of regulation is to ensure

---

[10] This interpretation of the reporting time pay regulation is consistent with the DLSE interpretation, which is the state agency authorized to interpret and enforce California's labor laws. (See *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 563 [67 Cal.Rptr.3d 468, 169 P.3d 889].) Although not binding on a court, the DLSE's construction is entitled to consideration and respect. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105, fn. 7 [56 Cal.Rptr.3d 880, 155 P.3d 284].)

proper scheduling].) The reporting time pay regulation protects an employee from losing all pay because of scheduling errors.

█ We do not agree with Price that he is entitled to receive more than the two-hour minimum; he did not report to work with the expectation that he would work a scheduled shift, but rather was scheduled to attend a meeting for an unspecified number of hours. Nor do we agree with Price that the term "usual" in the statute means the average of his previously scheduled days worked during his employment at Starbucks. Rather, the term "usual" refers to the employee's expectation of the hours in the customary workday, just as, in the alternative, a scheduled workday formalizes the expectation of the hours worked. During his employment, Price's expectations of hours worked was solely based upon his scheduled hours. Price was not scheduled to work on November 16, and his expectation was he had been called to work for a meeting on his day off. He did not lose any pay because of a scheduling error. He was paid for reporting to the meeting consistent with the reporting time pay regulation.

█ Since Starbucks complied with the reporting time pay regulation, the causes of action seeking continuing wages under section 203 (first cause of action) and failure to pay wages under section 204 (second cause of action) based upon the reporting time pay violation fail as a matter of law.[11] We therefore need not reach the issue of whether a private right of action exists to recover reporting time pay.

### c. Price's UCL Claim and Rights Under PAGA Fail as a Matter of Law

Price's remaining causes of action (fourth and fifth) are derivative. Price's UCL cause of action is dependent upon the right to recover additional reporting time pay, additional wage payments for untimely payment upon discharge, and damages arising from noncompliant wage statements. Price's PAGA claim is based upon the failure to timely pay him upon discharge. Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 182 [83 Cal.Rptr.2d 548, 973 P.2d 527]; *Dimon v. County of Los Angeles* (2008) 166 Cal.App.4th 1276, 1280, fn. 5 [83 Cal.Rptr.3d 576].) Summary judgment was properly granted.

---

[11] We do not consider Price's claim for the 43 minutes of unpaid wages because the issues raised by a motion for summary judgment are framed by the pleadings, and a party cannot defeat summary judgment on a theory not pleaded. (See *Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264–1265 [102 Cal.Rptr.2d 813]; see also *Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1225 [96 Cal.Rptr.3d 744].)

## DISPOSITION

The judgment is affirmed. Starbucks is entitled to costs on appeal.

Klein, P. J., and Croskey, J., concurred.

A petition for a rehearing was denied February 17, 2011, and appellant's petition for review by the Supreme Court was denied May 11, 2011, S191090.