Blanco ALONZO, et al., individually and on behalf of others similarly situated, Plaintiffs,

v.

MAXIMUS, INC., et al., Defendants.

Case No. CV 08–6755–JST (MANx).

United States District Court, C.D. California.

Dec. 5, 2011.

Ira R. Spiro, Justian Jusuf, Linh Hua, Spiro Moss LLP, Los Angeles, CA, for Plaintiffs.

Michael S. Kun, Aaron F. Olsen, Epstein Becker and Green PC, Los Angeles, CA, for Defendants.

## ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND (2) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

JOSEPHINE STATON TUCKER, District Judge.

Before the Court are (1) a Motion for Summary Judgment filed by Defendant Maximus, Inc. ("Defendant") (Doc. 127), and (2) a Motion for Partial Summary Judgment filed by the Plaintiff Class and individual named Plaintiffs (collectively, "Plaintiffs") (Doc. 126). The Court heard oral argument on both motions on October 31, 2011. Having considered the briefs and evidence submitted by the parties, and the positions advanced during oral argument, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment, and GRANTS in part and DENIES in part Plaintiffs' Motion for Partial Summary Judgment.

## I. BACKGROUND

"Defendant operates health and human services programs throughout the country, primarily for state and local government agencies." (Doc. 127–1 ¶ 1.) Among these programs are "welfare-to-work employment services, assisting welfare recipients in their efforts to return to the workforce and self-sufficiency." (*Id.*)

To staff these programs, Defendant employs Employment Case Managers who assist welfare recipients by providing advice and encouragement, setting goals, monitoring client progress, identifying employment opportunities, and helping clients overcome obstacles to employment. (Doc. 127–11 ¶ 8.)[1] At issue in this case are Defendant's employee compensation practices for Employment Case Managers in Defendant's welfare-to-work programs for Los Angeles County, Orange County, and San Diego County. (*Id.* ¶ 3.)[2]

Employment Case Managers are hourly employees. Pursuant to Defendant's time reporting policies, Employment Case Managers in each of Defendant's San Diego County, Los Angeles County, and Orange County locations self-report their time on a daily basis by rounding their hours worked to the nearest quarter hour and inputting that total into either paper timecards or electronic time sheets. (Doc. 127–1 ¶¶ 4–6.) Defendant does not round Employment Case Managers' time. (*Id.* ¶ 7.) Employment Case Managers are compensated semi-monthly according to their self-reported and self-rounded hours. (Doc. 127–13, Ex. R at 109–10.)

Defendant also offers bonuses to its San Diego, Los Angeles, and Orange County Employment Case Managers, including: (1) individual bonus awards, which are calculated and awarded pursuant to specific criteria set forth in written bonus policies for each program; and (2) MaxDollar bonuses, which are spot bonuses paid to employees who make unique or extraordinary contributions to clients or to the workplace. (Doc. 127–11 ¶¶ 10–11, 14.) Defendant does not include either type of bonus

1. Defendant uses various job titles for the individuals who perform the functions of Employment Case Managers. The Court uses the term "Employment Case Managers" to refer

to all of the positions included in the Class Definition. (*See* Doc. 107 at 22.)

2. Defendant's contract with San Diego County ended in August 2010. (Doc. 127–11 ¶ 4.)

payment when calculating the regular rate of pay for overtime compensation. (*Id.* ¶ 16.)

On November 26, 2007, the named plaintiffs in this action—Blanco Alonzo, Jodi Valdes, and Michelle Daubet (collectively, the "Named Plaintiffs")—filed this case as a putative class action in Los Angeles County Superior Court, asserting claims against Defendant related to the above-enumerated employee compensation practices. Defendant removed the action to federal court on October 14, 2008. (Doc. 1.)

On June 13, 2011, the Court granted in part, and denied in part the Named Plaintiffs' Motion for Class Certification. (Doc. 106.) The Court issued an amended certification order on June 17, 2011, 275 F.R.D. 513 (C.D.Cal.2011) (the "Certification Order"). (Doc. 107.) Pursuant to the Certification Order, the Court certified a class under Rule 23(b)(3) with respect to Plaintiffs' Off–the–Clock (rounding) Claim ("Rounding Claim"), Bonus/Overtime Claim, Paystub Claim, and Unfair Competition Law ("UCL") Claim, consisting of:

> All persons employed in California by defendant Maximus, Inc. as Employment Case Managers, and Lead Employment Case Managers, Case Manager, or Lead Case Manager, or in positions with substantially similar duties, during any [time] from November 26, 2003 until the time of final judgment in this action. The class includes the following positions: Manager/Facilitator, Specialist Case Management, Sanctions Specialist, Counselor–Case Management, Counselor–Enrollment/Eligibility, and Specialist–Work Force Analyst.

(*Id.* at 22.) The Court denied certification as to the Named Plaintiff's Off–the–Clock (working off-the-clock) Claim ("Off–the–Clock Claim"). (*Id.* at 17.)

On September 26, 2011, Defendant filed a Motion for Summary Judgment as to each of Plaintiffs' certified claims, including their derivative claim for waiting time penalties, and the Named Plaintiffs' individual Off–the–Clock Claims. (Doc. 127.) On that same date, Plaintiffs filed a Motion for Partial Summary Judgment as to their Bonus/Overtime Claim, including derivative waiting time penalties, Paystub Claim, and UCL Claim. (Doc. 126.)

## II. LEGAL STANDARD

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir.2000) (citation and quotation marks omitted). The burden then shifts to the non-moving party to

"cit[e] to particular parts of materials in the record" supporting its assertion that a fact is "genuinely disputed." Fed.R.Civ.P. 56(c)(1); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir.2010) ("non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor").

## III. DISCUSSION

### A. *Rounding Claim*

Defendant moves for summary judgment on Plaintiffs' Rounding Claim on the basis that Defendant's time rounding policy is facially neutral, and, therefore, permissible under California law. For the reasons set forth below, Defendant's Motion is GRANTED.

While no California statute or regulation expressly addresses the permissibility of using a rounding policy to calculate employee work time, the United States Department of Labor has adopted a regulation regarding rounding pursuant to the Fair Labor Standards Act (the "FLSA") that permits employers to use time rounding policies under certain circumstances:

> It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b) (2011).

While few Courts have interpreted this regulation, those that have recognize that the regulation permits employers to use a rounding policy for recording and compensating employee time as long as the employer's rounding policy does not "consistently result[ ] in a failure to pay employees for time worked." *See, e.g., Sloan v. Renzenberger, Inc.*, No. 10–2508–CM–JPO, 2011 WL 1457368, at *3 (D.Kan. Apr. 15, 2011).

■ That is, an employer's rounding practices comply with § 785.48(b) if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment. *East v. Bullock's, Inc.*, 34 F.Supp.2d 1176, 1184 (D.Ariz.1998) (granting summary judgment in employer's favor where "evidence show[ed] that [employer's] rounding system may not credit employees for all the time actually worked, but it also credits employees for time not actually worked" so that the employer's "rounding practices average[d] out sufficiently to comply with § 785.48(b)"); *see also Adair v. Wis. Bell, Inc.*, No. 08–C–280, 2008 WL 4224360, at *11 (E.D.Wis. Sept. 11, 2008) (approving policy where there was no evidence to suggest it systematically favored employer); *Contini v. United Trophy Mfg.*, No. 6:06–cv–432–Orl–18UAM, 2007 WL 1696030, at *3 (M.D.Fla. June 12, 2007) (granting employer's motion for summary judgment where the "[employer], throughout [the employee's] employment, [used] a consistent policy as to the rounding of clocking-in and clocking-out, which [was] both fair and evenly applied to all employees.").

■ An employer's rounding practices violate § 785.48(b) if they systematically

undercompensate employees. *See, e.g., Russell v. Ill. Bell Tel. Co.,* 721 F.Supp.2d 804, 820 (N.D.Ill.2010) (time rounding and log-out policies may violate FLSA if they "cause[ ] plaintiffs to work unpaid overtime"); *Austin v. Amazon.Com, Inc.,* No. C09–1679JLR, 2010 WL 1875811, at *3 (W.D.Wash. May 10, 2010) (denying defendant's motion to dismiss where policy "allows rounding when it benefits the employer without disciplining the employee; but disciplines the employee when the rounding does not work to the employer's advantage"); *Eyles v. Uline, Inc.,* No. 4:08–CV–577–A, 2009 WL 2868447, at *4 (N.D.Tex. Sept. 4, 2009) (granting summary judgment for plaintiff where defendant's rounding policy "encompasses only rounding down"); *Chao v. Self Pride, Inc.,* No. Civ. RDB 03–3409, 2005 WL 1400740, at *6 (D.Md. June 14, 2005) (ruling that employer's practice of rounding employee time down violated FLSA).

 The parties concede that the federal standard governs this case, as California courts look to federal regulations under the FLSA for guidance in the absence of controlling or conflicting California law, *Huntington Mem'l Hosp. v. Superior Court,* 131 Cal.App.4th 893, 903, 32 Cal. Rptr.3d 373 (2005), and the California Division of Labor Standards Enforcement (the "DLSE") has adopted the Department of Labor regulation in its Enforcement Policies and Interpretation Manual ("DLSE Manual"), DLSE Manual §§ 47.1–47.2.[3]

It is undisputed that Defendant employed a facially neutral time rounding policy. Defendant's Corporate Employee Manual required employees to self-report their time "on a daily basis by recording hours worked to the nearest quarter hour" on timesheets provided at the beginning of the pay period. (Doc. 127–13, Ex. R at 110; *id.,* Ex. S at 127.) And Defendant's human resources managers testified that Employment Case Managers in each of Defendant's San Diego, Orange County, and Los Angeles locations adhered to this policy by rounding their hours worked to the nearest quarter hour and entering that figure on a daily basis into an electronic time sheet on Defendant's computer system. (Doc. 127–17 ¶ 5 (San Diego); Doc. 130–15 ¶ 5 (Orange County); Doc. 130–14 ¶ 5 (Los Angeles).)

Plaintiffs do not dispute the mechanics of Defendant's time reporting policy. In fact, their expert acknowledges that "class members were required to and did round [the total hours worked] to the nearest quarter hour" on their self-reported time sheets. (Doc. 126–5 ¶ 12.) Rather, Plaintiffs contend that "[o]ver a period of time, such rounding resulted in putative class members being paid for less than all the time they actually worked" in violation of § 785.48. (Doc. 126–5 ¶ 12.)

In support of their contention, Plaintiffs point to records generated at Defendant's San Diego locations by an electronic system used to record when employees entered and exited Defendant's offices (the "Simplex System"). The Simplex System was "essentially the electronic equivalent

**3.** Statements in the DLSE manual are not binding on the Court, but may be considered for their persuasive value. *Areso v. CarMax, Inc.,* 195 Cal.App.4th 996, 1007, 124 Cal. Rptr.3d 785 (2011); *see Martinez v. Combs,* 49 Cal.4th 35, 50 n. 15, 109 Cal.Rptr.3d 514, 231 P.3d 259 (2010) (court gives "DLSE's current enforcement policies no deference because they were not adopted in compliance with the Administrative Procedure Act"). Here, the Court concludes that the DLSE's adoption of § 785.48(b) supports applying the regulation in this case because the DLSE's position is consistent with both the practice of California courts to look to Department of Labor regulations as guidance for interpreting analogous provisions of California law, and with the stipulation of the parties that § 785.48(b) governs this case.

of a sign in/sign out sheet. An employee could punch in their number when they arrived at the workplace and then punch in the number when they left the workplace." (Doc. 127–17 ¶ 6.; *see also* Doc. 136–2, Ex. A. 52:9–22.) Based on those entries, the Simplex System generated reports "in a variety of formats [showing] various clock-in and clock-out times for each employee for each date" (the "Simplex Records"). (Doc. 127–18 ¶ 16.) At least some employees also used the Simplex System to record the beginning and end of their lunch breaks. (Doc. 136–2, Ex. A. at 54:8–13.)

■ Plaintiffs used a sample of these Simplex Records to perform two statistical analyses. In the first, Plaintiffs compared the clock-in/clock-out times recorded by Simplex on a particular day with shift beginning and end times for that day. Plaintiffs conclude that their analysis shows that the number of minutes that would have been subtracted from employees' time under Defendant's rounding policy was 5.4% more than the number of minutes that would have been added to their time under Defendant's rounding policy. (Doc. 129–4 ¶ 5; Doc. 127–18 ¶ 19.) In the second, Plaintiffs compared the total hours reflected on Simplex Records for a given employee on a particular day with the total amount paid to that employee reflected on his or her timesheets. Plaintiffs conclude that analysis reveals a net underpayment of 472.72 minutes for the sample group. (Doc. 129–4 ¶ 8.) Based on these statistical comparisons, Plaintiffs assert a triable issue of fact as to whether Defendant's rounding policy is invalid under California law because it "result[ed], over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b). Plaintiffs are mistaken.

Even assuming the accuracy of Plaintiffs' mathematical calculations, which Defendant disputes, Plaintiffs' statistical analysis of Simplex Records does not create a genuine issue of material fact as to their Rounding Claim. At oral argument, Plaintiffs' counsel conceded that the evidentiary record is devoid of evidence that Simplex Records reflect time actually worked by Plaintiffs, as opposed to time Plaintiffs may have been present on Defendant's premises but not engaged in work activities. Rather, Plaintiffs' counsel clarified that the Rounding Claim is based on Plaintiffs' contention that all on-premises time reflected by Defendant's Simplex Records constitutes time during which Plaintiffs were subject to Defendant's control, and, therefore, compensable as a matter of law under the California Supreme Court's decision in *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 94 Cal.Rptr.2d 3, 995 P.2d 139 (2000). The Court disagrees with Plaintiffs' reading of *Morillion.*

■ In *Morillion,* the California Supreme Court considered whether employees who were required by their employer to travel to a work site on the employer's buses were "subject to the control of [the] employer" such that their travel time constituted compensable "hours worked" under Industrial Welfare Commission wage order No. 14–80. *Id.* at 578. The Court concluded that the employees were "subject to the control of [their] employer" during the time they traveled to the employer's work site because the employer "require[d] plaintiffs to meet at the departure points at a certain time to ride its buses to work," "prohibited them from using their own cars," and "subject[ed] them to verbal warnings and lost wages if they [did not use the employer's transportation]." *Id.* at 587. Accordingly, the employees' compulsory travel time constituted compensable "hours worked." *Id.* at 594. In so ruling, however, the Court clarified that:

[E]mployers do not risk paying employees for their travel time merely by pro-

viding them with transportation. Time employees spend traveling on transportation that an employer provides but does not require its employees to use may not be compensable as 'hours worked.' Instead, *by requiring* employees to take certain transportation to a work site, *employers thereby subject those employees to its control by determining when, where, and how they are to travel.* *Id.* at 588 (emphasis added). "The level of the employer's control over its employees, rather than the mere fact that the employer requires the employee's activity, is determinative." *Id.* at 587.

This case does not present a situation in which Plaintiffs were "subject to the control of [Defendant]" such that all time spent on Defendant's premises is compensable under the reasoning and holding of *Morillion.* Here, unlike in *Morillion,* Plaintiffs have presented no evidence that Defendant required them to arrive at its offices before their shifts began or to remain on the premises after their shifts ended. Nor have they presented evidence that Plaintiffs were engaged in work during any of the on-premises time reflected on their Simplex Records that was not accounted for in their electronic time sheets. In the absence of such evidence, the Simplex Records are simply immaterial to whether Defendant's rounding policy systematically undercompensated Plaintiffs, and, therefore do not create a genuine issue of material fact as to the legality of Defendant's rounding policy.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiffs' Rounding Claim.

### B. *Bonus/Overtime Claim*

Plaintiffs and Defendant both seek summary judgment in their favor on Plaintiffs' claim under California Labor Code § 510 for unpaid overtime resulting from Defendant's failure to include bonus payments in the "regular rate of pay" when calculating overtime compensation.

California Labor Code § 510 requires an employer to pay overtime compensation to an employee for "any work in excess of eight hours in one workday and any work in excess of 40 hours in any one work week ... at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab.Code § 510(a) (2011). As with the rounding policies discussed above, California law does not specifically address the inclusion or exclusion of bonus payments in the "regular rate of pay." *Marin v. Costco Wholesale Corp.,* 169 Cal.App.4th 804, 815, 87 Cal.Rptr.3d 161 (2008) ("no California court decision, statute, or regulation governs bonus overtime"). The parties agree, however, that federal law defining and interpreting "regular rate" under the FLSA governs this case. Their construction is supported by California case law and the DLSE Manual, each of which looks to FLSA standards to interpret the "regular rate of pay" under California law. *See Zator v. Sprint/United Mgmt. Co.,* No. 09cv0935–LAB (MDD), 2011 WL 1157527, at *3 (S.D.Cal. Mar. 29, 2011) ("California looks to the Fair Labor Standards Act to determine what ... constitutes the regular rate of pay for overtime purposes"); *Advanced–Tech Sec. Servs., Inc. v. Superior Court,* 163 Cal. App.4th 700, 707, 77 Cal.Rptr.3d 757 (2008) (California courts look to Department of Labor regulations interpreting the "regular rate" of pay under the FLSA to interpret that term as used in California Labor Code § 510); DLSE Manual § 49.1.2 ("In not defining the term 'regular rate of pay,' the Industrial Welfare Commission has manifested its intent to adopt the definition of 'regular rate of pay' set out in the [FLSA].")

Under the FLSA, the "regular rate" of pay "at which an employee is employed

shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," subject to certain enumerated exceptions. 29 U.S.C. § 207(e)(3). Defendant contends it was not required to include bonus payments paid to class members in calculating the "regular rate" of pay because the bonuses were discretionary, and, therefore excludable under § 207(e). The burden is on Defendant to establish that its bonus payments fall within one of the exceptions in § 207(e). *See Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966) (under the FLSA, "the burden of proof respecting exemptions is upon the company").

Section 207(e)(3)(a) excludes from the "regular rate":

> Sums paid in recognition of services performed during a given period if . . . both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly. . . .

*Id.; see also* DLSE Manual § 49.1.2.4(3) (incorporating text of 29 U.S.C. § 207(e)(3)).

The Department of Labor has interpreted that section to permit an employer to exclude a "discretionary bonus," but not a "promised bonus" from the "regular rate" of pay:

> In order for a bonus to qualify for exclusion as a discretionary bonus under section 7(e)(3)(a) the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid. The sum, if any, to be paid as a bonus is determined by the employer without prior promise or

agreement. The employee has no contract right, express or implied, to any amount. If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it.
> . . . .
> The bonus, to be excluded under section 7(e)(3)(a), must not be paid "pursuant to any prior contract, agreement, or promise." For example, any bonus which is promised to employees upon hiring or which is the result of collective bargaining would not be excluded from the regular rate under this provision of the Act. Bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's continuing in employment until the time the payment is to be made and the like are in this category. They must be included in the regular rate of pay.

29 C.F.R. § 778.211 (2011); *see also* DLSE Manual § 49.1.2.4(3) (incorporating 29 C.F.R. § 778.211).

Here, it is undisputed that Defendant provided two types of bonuses to its employees: (1) individual bonus awards, which were offered to class members in Orange County, Los Angeles County, and San Diego County pursuant to a written bonus policy that applied to each project; and (2) MaxDollar bonuses, which were spot bonuses paid to employees who made unique or extraordinary contributions. (Doc. 127–11 ¶¶ 10–11, 14.) It is also undisputed that Defendant did not include either type of bonus payment when calculating the regular rate of pay for overtime compensation. (*Id.* ¶ 16.) The Court considers whether Defendant properly excluded each type of bonus in turn.

### i. *Individual Bonus Awards*

██ The content of the individual bonus award policies for San Diego, Los Angeles, and Orange County is also undisputed. Though the policies varied slightly, the facts material to Plaintiffs' claim are generally applicable to each policy. The bonus plans were "an incentive bonus system established for the purpose of encouraging and motivating certain employees to perform in an outstanding manner." (Doc. 127–12, Ex. E at 50 (Los Angeles); *see id.*, Ex. B at 29 (San Diego); Doc. 127–13, Ex. H at 72 (Orange County).) Bonuses were paid on a monthly basis to Employment Case Managers who met numerically defined performance thresholds. (Doc. 127–12, Ex. E at 52 (Los Angeles); *id.*, Ex. B at 30 (San Diego); Doc. 127–13, Ex. H at 73 (Orange County).) For example, under Defendant's policy applicable to Los Angeles Employment Case Workers in 2004, "[case workers] who achiev[ed] a monthly job placement rate between 9.0% and 10.99%, with an average wage for their new placements below $8.45 ... [were] eligible to receive a bonus award of $30." (Doc. 127–13, Ex. E at 52.) Beginning in December 2003, Employment Case Managers in Orange County "achieving the required participation standard ... during a calendar month for 80 percent or more of their assigned cases [received] a bonus of $125.00." (Doc. 127–13, Ex. H at 73.) And Employment Case Managers in San Diego "exceeding [enumerated eligibility] targets related to participation [were] bonused once at the highest level according to [a schedule set forth in the bonus policy]." (Doc. 127–12, Ex. B at 30; *see also* Doc. 126–3, Ex. 8 (San Diego CalWORKS Bonus Calculation Worksheet reflecting that individual incentive bonuses were calculated according to the numerical performance goals set forth in the written bonus policy).)

By their plain terms, the individual bonus award plans for Los Angeles, Orange County, and San Diego fall far short of the criteria for exclusion from the "regular rate" of pay under § 207(e). Section 207(e)(3) makes clear that an employer may only exclude sums paid to an employee where: (1) the fact that a payment is to be made is determined at the sole discretion of the employer near the end of the pay period, and (2) the amount of the payment is determined at the sole discretion of the employer near the end of the pay period. 29 U.S.C. § 207(e)(3). Here, both the fact that a monthly bonus would be paid when an employee met certain defined performance thresholds and the amount of the payment were established by written bonus policies that governed the bonus compensation program for a year or more.

Moreover, the individual bonus award policies fall within Department of Labor guidance regarding promised payments that must be included in the regular rate under § 778.211. By their own terms, the bonuses were "an incentive bonus system" (Doc. 127–12, Ex. E at 50 (Los Angeles); *see id.*, Ex. B at 29 (San Diego); Doc. 127–13, Ex. H at 72 (Orange County)), meant "to induce [Employment Case Managers] to work more steadily ... rapidly [and] efficiently." 29 C.F.R. §§ 778.211(c).

Defendant proffers two arguments as to why its individual bonus awards were discretionary, and, therefore, properly excluded from the regular rate of pay. Each fails.[4]

---

4. Defendant also argues that it is not required to pay any additional overtime owing to Plaintiffs under their Bonus/Overtime Claim because any such amount due is de minimis. (Doc. 130 at 13–14.) While the basis for Defendant's argument is unclear, it fails under either apparent theory advanced in its papers. To the extent Defendant argues that any increase in Plaintiffs' overtime rate is de minim-

First, Defendant cites to "disclaimers" in its bonus award policies that confer upon it discretion not to pay incentive bonuses if a project exceeds budgeted bonus funds or falls below planned profit levels. (Doc. 127–11, Ex. E at 50 (Los Angeles); *id.*, Ex. B at 29 (San Diego); Doc. 127–13, Ex. H at 72 (Orange County).) The mere fact that Defendant could decline to issue bonuses upon the occurrence of certain contractually defined contingencies does not transform its individual bonus awards into discretionary bonus payments. "The clear thrust of § 207 is that once a bonus is promised to an employee as an inducement to achieve some business goal, even if that promise is not a guarantee of payment but contingent on other factors such as the financial state of the company, it is to be included in the regular rate of pay if and when it is actually paid." *Gonzalez v. McNeil Techs., Inc.*, No. 1:06cv204, 2007 WL 1097887, at *4 (E.D.Va. Apr. 11, 2007) (citing survey of cases in *McLaughlin v. McGee Bros. Co., Inc.*, 681 F.Supp. 1117, 1133 (W.D.N.C.1988)). Therefore, "Defendant's practice of conditioning receipt of [individual award] bonuses on the financial well-being of the company as a whole and other factors does not transform them into 'discretionary' bonuses as that word is to be understood in the context of [§ 207(e)]." *Id.*

Second, Defendant points to the fact that its Corporate Employee Manual states that "[a]t MAXIMUS, a bonus is in addition to, not a part of, the regular salary" and "[t]he bonus is not a right," as evidence that its individual bonus awards were discretionary. (Doc. 127–13, Ex. T at 118.) Again, Defendant misunderstands the meaning of § 207(e) and § 778.211. Statements made in an employee manual that bonuses "were not a right" or were "in addition to . . . [an employees'] regular salary" may have put employees on notice that Defendant was not required to offer bonus payments, but those statements do not insulate Defendant from including individual bonus awards in the regular rate of pay once it approved written bonus policies. Defendant had the "discretion" to choose not to establish an incentive bonus program. But such discretion does not transform the bonus programs it actually instituted into "discretionary bonus[es]" under § 207(e) and § 778.211. To hold otherwise would permit employers to exclude bonuses which meet § 207(e)'s nondiscretionary criteria simply by labeling them "discretionary." Pursuant to its written bonus polices, Defendant no longer maintained "discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid," and was, therefore, required to include individual bonus awards in the regular rate of pay for overtime compensation.

Accordingly, Plaintiffs' Motion for Partial Summary Judgment on its Bonus/Overtime Claim is GRANTED as to those class members who received individual bonus awards under the written bonus policies in effect in Los Angeles, Orange County, and San Diego during the class

is under *Lindow v. United States,* its reliance is misplaced because the de minimis rule set forth in *Lindow* pertains to de minimis amounts of time, not de minimis amounts of money. *See Lindow v. United States,* 738 F.2d 1057, 1062–63 (9th Cir.1984) ("The *de minimis* rule is concerned with the practical administrative difficulty of recording small amounts of time for payroll purposes."). To the extent Defendant argues that bonus payments are excludable under 29 C.F.R. § 548.305, Defendant makes no effort to explain why a regulation governing the exclusion of certain de minimis amounts of compensation under the FLSA should apply to this case, and offers as an example of excludable time a calculation that appears to be erroneous under § 548.305 in any event. Accordingly, Defendant's "de minimis" arguments do not preclude summary judgment.

period. Defendant's Motion for Summary Judgment on Plaintiffs' Bonus/Overtime Claim is DENIED as to those class members.

### ii. *MaxDollar Bonuses*

■ Unlike individual bonus awards, MaxDollar bonuses were "spot bonuses to employees who ... made unique or extraordinary efforts" and were not awarded according to pre-established criteria or pre-established rates. (Doc. 127–11 ¶ 11.) As Defendant's Corporate Employee Manual explains, "MaxDollars [unlike individual bonus awards] are funds from the bonus pool that are available for immediate disbursement or reward for deserving ... staff." (Doc. 127–13, Ex. T at 118.) "The reward is dispensed in the form of a certificate and bonus" that "[t]he recipient may 'cash in' ... by forwarding the original certificate to Corporate HR for payment through the paycheck, less applicable taxes." (*Id.*)

MaxDollar bonuses meet the exclusion criteria under § 207(e) because they are determined at the sole discretion of Defendant at or near the time of payment and are not made pursuant to any prior contract or promise causing Employment Case Managers to expect such payments regularly. Plaintiffs have set forth no facts showing otherwise. Accordingly, Defendant's Motion for Summary Judgment on Plaintiffs' Bonus/Overtime Claim is GRANTED as to funds paid to class members as MaxDollar Bonuses. Plaintiffs' Motion for Partial Summary Judgment is DENIED as to those class members.

### C. *Claim For Waiting Time Penalties Under California Labor Code § 203*

Plaintiffs claim that they are entitled to waiting time penalties under California Labor Code §§ 201–203 for any amounts found owing to them under their Rounding Claim and Bonus/Overtime Claim. As set forth above, Defendant is not liable to Plaintiffs under their Rounding Claim. Therefore, the Court addresses only whether Defendant must pay waiting time penalties on the amounts of unpaid overtime due to Plaintiffs under their Bonus/Overtime Claim.

■ Pursuant to California Labor Code § 203, an employer is liable for penalties if it "willfully fails to pay" wages owed to an employee at the time he or she is discharged or quits. Cal. Lab.Code § 203(a). "A willful failure to pay wages within the meaning of [that section] occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Cal.Code Regs. tit. 8, § 13520 (2011). A "good faith dispute ... occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee." *Id.* "The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." *Id.* However, "[d]efenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a 'good faith dispute.'" *Id.*

■ Here, Defendant has established the existence of a "good faith dispute" regarding whether it was required to include individual bonus award payments in the calculation of the regular rate of pay for overtime compensation. Though Defendant's arguments did not ultimately carry the day under the law as found by this Court, Defendant nonetheless presented good faith defenses based on the language of its written bonus policies and employee manual that, "under all the circumstances," were not unsupported by any evidence, were not unreasonable, and were not presented in bad faith. Cal.Code Regs.

tit. 8, § 13520. Because Plaintiffs have presented "no other evidence suggest[ing Defendant] acted in bad faith, [Defendant's] presentation of a good faith defense, based in law or fact . . . negate[s] a finding of willfulness." *Amaral v. Cintas Corp. No. 2,* 163 Cal.App.4th 1157, 1204, 78 Cal.Rptr.3d 572 (2008). Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to Plaintiffs' claim for waiting time penalties. Plaintiffs' Motion for Partial Summary Judgment as to that claim is denied.

### D. Claim Under California Labor Code § 226(a)

California Labor Code § 226 requires "employers [to] provide accurate itemized statements of wages to their employees" that contain certain statutorily mandated information. *Morgan v. United Retail Inc.,* 186 Cal.App.4th 1136, 1143, 113 Cal. Rptr.3d 10 (2010). Specifically, the statute requires an employer to "furnish each of his or her employees . . . an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, . . . (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab.Code § 226(a). An employer is only liable for damages as a result of failing to furnish conforming wage statements, however, to employees that *"suffer[ ] injury as a result of a knowing and intentional failure* by an employer to comply with [section 226(a) ] . . . ." Cal. Lab.Code § 226(e) (emphasis added). Therefore, a plaintiff must establish two elements to recover damages under section 226: (1) that a defendant's wage statements violated one of the enumerated requirements in section 226(a), *and* (2) that the violation was "knowing and intentional" and resulted in "injury" to the plaintiff.

Both Plaintiffs and Defendant move for summary judgment on Plaintiffs' Paystub Claim for statutory damages for non-conforming wage statements under California Labor Code § 226. Plaintiffs contend they are entitled to summary judgment on their claim for damages under section 226 because: (1) Defendant's wage statements do not list the inclusive dates of the pay period or the hourly rates of pay, (2) Defendant knowingly and intentionally failed to include such information, and (3) the class was injured by the lack of information because they had to perform mathematical calculations to determine the regular rate of pay by dividing the total wages paid by the number of hours worked. (Doc. 126 at 19–20.) Defendant, on the other hand, contends it is entitled to summary judgment on Plaintiffs' claim for damages under section 226 because the need to perform simple division to determine the hourly rate of pay is not a legally cognizable injury under section 226(e). (Doc. 127 at 21–22.)

Defendant's wage statements failed to set forth the inclusive dates of the pay period and all applicable hourly rates. In that regard, they violated section 226. *See* Cal. Lab.Code §§ 226(a)(6), (a)(9). Accordingly, the only issue before the Court is whether the failure to list such information resulted in "injury" to the Plaintiffs within the meaning of section 226(e).

The parties do not provide, and the Court's research does not reveal, any controlling California Supreme Court decision regarding the definition of "injury" under section 226(e). Thus, this Court must apply the rule that it believes the California Supreme Court would adopt under the circumstances. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 663 n. 10 (9th Cir.1998).

California courts have made clear that "[t]he injury requirement in [section 226(e) ] cannot be satisfied simply if one of the nine itemized requirements in [section 226(a) ] is missing from a wage statement." *Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1142, 122 Cal.Rptr.3d 174 (2011); *see also Jaimez v. DAIOHS USA, Inc.*, 181 Cal.App.4th 1286, 1306–07, 105 Cal.Rptr.3d 443 (2010) (employees "must establish 'actual injury' arising from the receipt of inaccurate paystubs"). Rather, "the statute requires that an employee may not recover for violations of [section 226(a) ] unless he or she demonstrates *an injury* arising from the missing information." *Price*, 192 Cal.App.4th at 1142–43, 122 Cal. Rptr.3d 174. Courts interpreting California law have recognized that "the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked" can constitute an injury under section 226(e). *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 374 (C.D.Cal.2009).

In *Price v. Starbucks Corp.*, the California Court of Appeal recently clarified the scope of "mathematical injury"—i.e. injury arising from wage statements that require employees to make mathematical computations to verify their pay—that is compensable under section 226(e). 192 Cal. App.4th at 1142–44, 122 Cal.Rptr.3d 174. In that case, the plaintiff filed a putative class action against his employer asserting, among other causes of action, that the employer failed to provide paystubs that complied with California law because they did not list the total hours worked, net wages earned, or all applicable hourly rates. *Id.* at 1142 n. 4, 122 Cal.Rptr.3d 174. As to the hourly rate violation, plaintiff alleged that "[his] earnings statement

list[ed] the regular rate of pay, but fail[ed] to list the overtime rate of pay, requiring him to ensure that the overtime rate [was] one and one-half his regular rate of pay." *Id.* He further alleged that he and the putative class suffered an injury within the meaning of section 226(e) because the failure to list all required information on his paystub "caused confusion and possible underpayment of wages due, required the putative class to file the lawsuit, and forced the putative class to attempt to reconstruct their time and pay records." *Id.* at 1142, 122 Cal.Rptr.3d 174 (internal quotation marks omitted).

The *Price* court rejected plaintiff's argument and dismissed his claim for failure to allege a cognizable injury under section 226(e). *Id.* In so holding, the court distinguished the "mathematical injury" alleged by plaintiff that "required him to add up his overtime hours and regular hours and to ensure his overtime rate of pay [was] correct," from those cases involving "an injury arising from inaccurate or incomplete wage statements, which required those plaintiffs to engage in discovery and mathematical computations to reconstruct time records to determine if they were correctly paid." *Id.* at 1143, 122 Cal. Rptr.3d 174. Unlike the latter cases, the plaintiff's purported injury was based on the fact that the missing wage information required him to perform "simple math," and "not ... upon any allegation that the information [forming the basis for those calculations was] inaccurate." *Id.* Accordingly, the *Price* court concluded that the plaintiff failed to allege an injury sufficient to support damages under section 226(e).

Relying on *Price*, a court of this District recently granted an employer's motion for summary judgment as to an employee's section 226 claim because the employee suffered no cognizable mathematical injury from the fact that her wage statement

failed to add together regular and overtime hours or to list the specific hourly rate for overtime work. *York v. Starbucks Corp.,* No. CV–08–07919 GAF (PJWx), 2011 WL 4597489, at *1 (C.D.Cal. Aug. 5, 2011). The court held that, "consistent with *Price,* Plaintiff would not be considered to have suffered any injury ... simply because she had to perform basic math by adding the overtime and regular hours together, ensure that her overtime rate of pay was correct, and speculate on the possibility that she may have been underpaid." *Id.* at *4. "Instead, she would have to show that the information on her wage statement was either inaccurate or incomplete, i.e., it did not contain the hours worked or the regular hourly rate." *Id.*

 Here, as in *Price* and *York,* Plaintiffs have failed to show that the missing information on their wage statements required them to do any more than "simple math" to determine whether they were compensated at the proper hourly rate. It is undisputed that the wage statements provided to Plaintiffs listed the total hours worked for each category of work time— i.e., "sick" time, "regular earn" time, and "overtime"—and the total wages paid for each category of time. (*See* Doc. 130–8, Exs. 11–12; Doc. 126–3, Ex. 9.) Based upon this information, Plaintiffs could determine the hourly rate at which they were compensated for regular and overtime work by simply dividing the total wages paid for that category of time by the total hours worked for that category of time. They could determine whether the hourly rate of overtime pay was one and one-half times that of regular pay by simple multiplication. Plaintiffs have identified no evidence in the record establishing that they were required to go outside the four corners of their wage statements to determine the missing wage information. Nor have they identified any independent injury precipitated by Defendant's failure to list the inclusive dates of the pay period

that would otherwise satisfy the injury prong of the section 226 analysis.

Therefore, as in *Price,* Plaintiffs' alleged injury is based only upon their need to perform "simple math" to determine the accuracy of their hourly pay, and not upon any evidence "that the information [in their wage statements] is inaccurate" or that they needed to conduct discovery and perform computations based upon multiple sources to determine whether their wages were reported accurately. *Compare Price,* 192 Cal.App.4th at 1143, 122 Cal.Rptr.3d 174 (finding no injury when simple math alone was required, in the absence of inaccuracy or lack of information, to perform a basic calculation), *with McKenzie v. Fed. Express Corp.,* 275 F.R.D. 290, 292, 294–95 (C.D.Cal.2011) (finding injury where content of wage statements led to double counting of overtime hours and hourly rate labeled as "overtime" was inaccurate), *Perez v. Safety–Kleen Sys., Inc.,* 253 F.R.D. 508, 517 (N.D.Cal.2008) (denying defendant's motion for summary judgment where defendant entered hours inaccurately on wage statement), *and Wang v. Chinese Daily News, Inc.,* 435 F.Supp.2d 1042, 1050–51 (C.D.Cal.2006) (denying defendants' motion where wage statements did not accurately reflect the hours worked). Much to the relief of math teachers everywhere, the California Court Appeal and courts of this District have held that performing simple math alone is not an injury compensable under California law. This Court now joins them.

Therefore, based upon the record in this case, the Court concludes that Plaintiffs have failed to identify evidence of injury sufficient to raise an issue of material fact as to whether they suffered a compensable injury under section 226(e). Defendant's Motion for Summary Judgment is GRANTED as to Plaintiffs' Paystub Claim. Plaintiffs' Motion for Partial Sum-

mary Judgment is DENIED as to that Claim.

### E. *UCL Claim*

Plaintiffs' final certified claim asserts that Defendant's violation of the statutes set forth above constitutes an unlawful business practice under California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.* The UCL "borrows violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003) (citing *Cel–Tech Commc'ns, Inc. v. L.A.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999)) (internal quotation marks omitted). Accordingly, Plaintiffs' UCL claim "stand[s] or fall[s] depending on the fate of the antecedent substantive causes of action," which were addressed by the Court above. *Krantz v. BT Visual Images, L.L.C.*, 89 Cal.App.4th 164, 178, 107 Cal. Rptr.2d 209 (2001).

Plaintiffs prevailed as to the portion of their Bonus/Overtime Claim based on Defendant's failure to include individual bonus awards in the regular rate of pay for overtime compensation. The California Supreme Court has made clear "that the failure to pay legally required overtime compensation falls within the UCL's definition of an 'unlawful . . . business act or practice.'" *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1206, 127 Cal.Rptr.3d 185, 254 P.3d 237 (2011); *see also Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 177–78, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000) (holding that the UCL authorizes restitution for payment of unlawfully withheld wages). Therefore, Plaintiffs are entitled to restitution of the amounts owed to them under their Bonus/Overtime Claim, as set forth above. Plaintiffs' Motion for Partial Summary Judgment is GRANTED as to those amounts. Plaintiffs have not moved for summary judgment as to their request for injunctive relief or attorney's fees under their UCL Claim. Therefore, the Court has made no determination as to whether Plaintiffs are also entitled to those remedies.

Defendants' Motion for Summary Judgment on Plaintiffs' UCL Claim is GRANTED to the extent Plaintiffs seek remedies under the UCL based on their Rounding Claim, Bonus/Overtime Claim for MaxDollar Bonuses, or Paystub Claim.

### F. *Individual Claims*

 Defendant also moves for summary judgment on the Named Plaintiffs' individual Off-the Clock Claims. To prevail on claims of off-the-clock overtime work under California law, a plaintiff must demonstrate knowledge on the part of the employer of the overtime work the individual performed. *See Morillion*, 22 Cal.4th at 585, 94 Cal.Rptr.2d 3, 995 P.2d 139; *White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1083 (N.D.Cal.2007) ("To prevail on his off-the-clock claim, [plaintiff] must prove that Starbucks had actual or constructive knowledge of his alleged off-the-clock work."). Here, the Named Plaintiffs each testified during their depositions that they were instructed by their respective supervisors to work off-the-clock and inaccurately report their time. (*See, e.g.,* Doc. 129–2, Ex. 13 at 88:8–89:5, 89:18–25; *id.,* Ex. 14 at 237:4–238:23; *id.,* Ex. 15 at 165:9–21). They have, therefore, raised an issue of fact that precludes summary judgment. Accordingly, Defendant's Motion for Summary Judgment is DENIED as to the Named Plaintiff's individual Off–the–Clock Claims.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's Motion for Summary Judg-

ment, and GRANTS in part and DENIES in part Plaintiffs' Motion for Partial Summary Judgment:

(1) Defendant's Motion for Summary Judgment is GRANTED as to Plaintiffs' Rounding Claim.

(2) Plaintiffs' Motion for Partial Summary Judgment is GRANTED as to Plaintiffs' Bonus/Overtime Claim insofar as it pertains to amounts paid to class members as individual bonus awards under the written bonus policies in effect in Los Angeles County, Orange County, and San Diego County during the class period. Defendant's Motion for Summary Judgment on Plaintiffs' Bonus/Overtime Claim is DENIED as to those amounts.

(3) Defendant's Motion for Summary Judgment is GRANTED as to Plaintiffs' Bonus/Overtime Claim insofar as it pertains to amounts paid to class members as MaxDollar Bonuses. Plaintiffs' Motion for Partial Summary Judgment is DENIED as to those amounts.

(4) Defendant's Motion for Summary Judgment is GRANTED as to Plaintiffs' claim for waiting time penalties. Plaintiffs' Motion for Partial Summary Judgment is DENIED as to that claim.

(5) Defendant's Motion for Summary Judgment is GRANTED as to Plaintiffs' Paystub Claim. Plaintiffs' Motion for Partial Summary Judgment is DENIED as to that Claim.

(6) Defendants' Motion for Summary Judgment is GRANTED as to Plaintiffs' UCL Claim insofar as it pertains to amounts sought by Plaintiffs under their Rounding Claim, Bonus/Overtime Claim for MaxDollar Bonuses, or Paystub Claim. Plaintiffs' Motion for Partial Summary Judgment is GRANTED as to their

UCL Claim insofar as it pertains to amounts to which they are entitled under their Bonus/Overtime Claim.

(7) Defendant's Motion for Summary Judgment is DENIED as to the Named Plaintiff's individual Off–the–Clock Claims.