Filed 10/4/22  Chilpa v. American Concrete Polishing CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| GEORGE CHILPA, et al., | B294648 c/w B294651, B297677 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. Nos. BS170124, BS170125) |
| AMERICAN CONCRETE POLISHING CO., et al., | |
| Defendants and Appellants. | |

APPEALS from judgments and an order of the Superior Court of Los Angeles County, Edward B. Moreton Jr., Judge.  Affirmed.

Brown Gitt Law Group, Thomas P. Brown IV and Cynthia E. Gitt, for Defendants and Appellants.

Law Office of Eugene Lee and Eugene D. Lee, for Plaintiffs and Respondents.

---

## INTRODUCTION

Respondents George Chilpa and Daniel Lusk are former employees of appellants American Concrete Polishing Co., ACP Blason, LLC, and Blason Industries, Inc. (collectively ACP). Following their termination, Chilpa and Lusk brought wage and hour claims against ACP before the Labor Commissioner, who issued decisions in their favor. ACP appealed both decisions to the trial court, which held a joint bench trial on Chilpa's and Lusk's claims.[1]

In its opening trial brief, ACP predicted the evidence would show Chilpa and Lusk each worked outside California for at least one month and argued California law did not apply to their alleged out-of-state work. Lusk testified that aside from a single day's work in Nevada, he worked exclusively in California. The record does not reveal whether Chilpa testified about any out-of-state work.

---

[1] "Although denominated an 'appeal,' the proceeding in the trial court is de novo. It is a new trial in the fullest sense; i.e., the Commissioner's decision is 'entitled to no weight whatsoever' and the facts presented to the trial court may include entirely new evidence." (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2022) Ch. 11-J ¶ 11:1420, quoting *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1116, 1120.)

Pursuant to the court's order to submit written closing arguments, Chilpa and Lusk filed a closing trial brief arguing that California law applied to their claims because, inter alia, ACP had failed to adduce any evidence they worked outside California. Their closing brief also calculated the unpaid wages and statutory penalties they argued the evidence showed they were entitled to. ACP neither objected to their calculations nor identified any evidence of out-of-state work.

The court ruled in favor of Chilpa and Lusk. It entered judgments adopting their calculations in awarding unpaid meal period wages, unpaid overtime, and statutory waiting time penalties. The court also awarded, inter alia, statutory penalties for inaccurate wage statements. The court subsequently granted Chilpa's motion for attorney fees under Labor Code section 98.2, applying a multiplier of 1.5 to the lodestar in setting the amount of the fee award.[2]

In these consolidated appeals from the judgments and the fee order, ACP contends: (1) the court erred in applying California law to Chilpa's and Lusk's alleged out-of-state work; (2) the court erred in adopting Chilpa and Lusk's calculations in their closing trial brief, which were assertedly unsubstantiated by the evidence; (3) the court erred in awarding statutory penalties for inaccurate wage statements, because Chilpa's and Lusk's wage statements accurately reported the wages they were paid; (4) the court

---

[2]    Undesignated statutory references are to the Labor Code.

3

abused its discretion in finding Chilpa's and Lusk's testimony credible; and (5) the court abused its discretion in applying a multiplier of 1.5 in awarding Chilpa attorney fees. We conclude that ACP has forfeited its first two contentions, and that its remaining contentions lack merit. Accordingly, we affirm.

## BACKGROUND

### A. Labor Commissioner Decisions

Chilpa and Lusk are former employees of ACP. Chilpa was terminated in June 2015, after a coworker reported he had left marijuana and related paraphernalia in a company vehicle parked at a job site. Lusk was terminated in August 2015, after a coworker reported he had drunk alcohol at a job site.[3]

In December 2015, Lusk filed a complaint against ACP with the Labor Commissioner, alleging ACP committed numerous wage and hour violations from May 1, 2014 to July 27, 2015. In April 2016, Chilpa followed suit, alleging similar violations from May 1, 2011 to May 15, 2015. In March 2017, the Commissioner held a joint hearing on the complaints. Although Chilpa testified he had been employed by ACP from mid-2011 to mid-2015, neither he nor ACP submitted any record of his employment before 2015. Chilpa

---

[3] ACP misrepresents the record, asserting Chilpa and Lusk each were terminated for bringing methamphetamine and marijuana to work.

4

testified he had burned his pre-2015 wage statements because he had been angry about the alleged violations. ACP argued Chilpa and Lusk performed "some" work outside California, and therefore were not entitled to application of California's overtime laws.

In June 2017, the Commissioner issued its decisions on Chilpa's and Lusk's complaints. In identical footnotes to the decisions, the Commissioner rejected ACP's challenge to the application of California's overtime laws, stating: "[S]ince Plaintiff is a California resident and Defendant's home office is located in California, the Division of Labor Standards and Enforcement takes the position that Plaintiff is entitled to the benefit of the California Labor Code even though he worked occasionally in Arizona."

The Commissioner found Chilpa was not credible in claiming he had destroyed his pre-2015 employment records, and therefore construed the absence of those records against him. On the basis of Chilpa's 2015 records and his testimony, however, the Commissioner found ACP had violated Labor Code and wage order provisions concerning overtime, meal periods, rest periods, and timely payment of wages upon termination, and awarded him approximately $6,000 in unpaid wages and statutory penalties. On the basis of Lusk's evidence, the Commissioner found violations concerning overtime, meal periods, timely payment of wages upon termination, and timely provision of requested employment records, and awarded Lusk approximately $9,400 in unpaid wages and penalties.

### B. Trial De Novo

In June 2017, ACP appealed the Labor Commissioner's decisions to the trial court. In October 2017, Chilpa and Lusk each filed a notice of claims in the trial court, identically alleging: (1) ACP failed to furnish accurate wage statements, in violation of section 226, subdivision (a); (2) ACP failed to pay overtime, in violation of sections 201 and 510; (3) ACP failed to provide meal and rest periods, in violation of section 512 and the applicable wage order; (4) ACP failed to timely provide requested payroll and personnel records, in violation of sections 226, subdivision (c), and 1198.5, subdivision (b); and (5) ACP's aforementioned violations also violated the unfair competition law, Business and Professions Code section 17200 et seq.

In January 2018, ACP filed an opening trial brief. ACP predicted the evidence would show: (1) Chilpa worked "most or all" of eight months in other states, viz., Arizona, Florida, Georgia, Kentucky, and Nevada; and (2) Lusk worked most or all of one month in Nevada. ACP argued California law did not apply to the alleged out-of-state work. In June 2018, Chilpa and Lusk filed an opening trial brief, in which they quoted ACP's allegations of out-of-state work. They argued that even assuming, arguendo, ACP's allegations were true, California law applied to their claims because they principally worked in California, they were California residents, ACP was headquartered in California, and ACP issued its payments in California.

6

The court held a bench trial in June 2018, which was not reported. According to the settled statement later certified by the court, Lusk testified, inter alia, that aside from a single day's work in Las Vegas, Nevada, he worked exclusively in California. The settled statement does not reveal whether Chilpa testified about any out-of-state work.

The parties stipulated to the admission of Lusk's timesheets and wage statements throughout his employment, as well as Chilpa's timesheets and wage statements from 2015. Chilpa acknowledged his prior testimony that he had destroyed his pre-2015 documents. However, Chilpa testified that his pre-2015 work schedule had been the same as (or heavier than) the schedule reflected in his remaining documents. Chilpa and Lusk each testified that their timesheets and wage statements showed overtime and meal period violations. On cross-examination, Lusk acknowledged that prior to his employment with ACP, he had sustained three felony convictions, viz., a 2010 conviction for possession of cocaine and earlier convictions for possession of methamphetamine and "[s]trongarm robbery."[4]

ACP called three witnesses: CEO Ben Timmerman, employee Rick Brewer, and former employee Michael Moore. Moore testified that during his employment with ACP, he

---

[4] ACP again misrepresents the record, asserting Lusk was convicted of driving under the influence of cocaine and methamphetamine.

worked in California for 1.5 years (in 2012 and 2013), and in North Carolina for six years. In July 2012 (while he was working in California), he began working with Chilpa, whom he directly supervised for over 100 days. The settled statement does not otherwise reveal whether any of ACP's witnesses testified about the location of Chilpa's and Lusk's work.[5]

### C. Closing Arguments

During trial, the court ordered the parties to submit "written closing arguments" addressing, inter alia: (1) "[a]pplication of CA wage laws to out-of-state work"; and (2) "[c]alculation and evidentiary basis for unpaid wages." The court ordered the parties to file closing briefs by July 27, 2018, and reply briefs by August 17.

On July 25, Chilpa and Lusk filed their closing brief. Regarding the application of California law, they argued: "[D]efendants never adduced any evidence establishing that plaintiffs worked out-of-state for any length of time whatsoever. Lusk testified on direct that he worked out of state for a total of only 1 day (in Las Vegas closer to the end of his tenure)." Chilpa and Lusk further argued that even assuming, arguendo, they worked outside California for "any

---

[5] Moore did not testify he worked in Arizona, Florida, Georgia, or Kentucky. Without explanation or citation to the record, ACP asserts Moore "generally was on-site" with Chilpa and Lusk when they allegedly worked in these states.

8

significant length of time," California law applied because they were California residents, they received direction from California, they were paid in California, and ACP was headquartered in California.

Chilpa and Lusk also calculated the wages and penalties they argued they were owed. Their calculations were based on information contained in attached charts described as "compilation[s] and audit[s]" of the timesheets and wage statements admitted into evidence during trial, which had been entered into a wage-and-hour computer program. In calculating unpaid wages for meal period violations (§ 226.7, subd. (c)) and statutory penalties for wage statement violations (§ 226, subd. (e)(1)), Chilpa and Lusk argued the evidence showed that in each pay period they worked, they were denied at least one hour's worth of meal period wages, which their wage statements failed to report.[6]

---

[6]    Chilpa acknowledged that his timesheets and wage statements were limited to those from 2015, covering only a fraction (1/9.375) of his employment with ACP. To estimate the unpaid wages and statutory penalties covering his entire employment, Chilpa calculated the wages and penalties supported by his 2015 documents, and multiplied those sums by 9.375. Chilpa argued the estimate was reasonable in light of his testimony that his pre-2015 work schedule had been the same as (or heavier than) the schedule reflected in his 2015 documents, which he argued satisfied his relaxed burden of proof in the face of ACP's failure to preserve its own copies of his pre-2015 documents as required by the applicable wage order.

Two days after Chilpa and Lusk filed their closing brief, ACP filed its own closing brief (it did not additionally file a reply, as the court had authorized). ACP argued Chilpa and Lusk generally were not credible because Chilpa had destroyed his pre-2015 employment documents, and Lusk had sustained felony convictions. Although ACP further argued California law did not apply to Chilpa's and Lusk's alleged out-of-state work, ACP did not identify any evidence of such work. Nor did ACP object to Chilpa and Lusk's calculations of unpaid wages and statutory penalties.

### D. Judgments

In October 2018, the court issued written findings of fact and conclusions of law. Without expressly addressing when, if ever, Chilpa and Lusk worked outside California, the court concluded that California law applied to the entirety of their claims, reasoning: "The employers' headquarters were in California. The plaintiffs were California residents, their work was directed from California, and they were paid from California." The court rejected Chilpa's and Lusk's claims of rest period violations. However, the court found for Chilpa and Lusk on their claims of meal period violations, unpaid overtime, inaccurate wage statements, and untimely provision of requested payroll and personnel records. In awarding meal period wages, overtime wages, and statutory "waiting time" penalties for these unpaid wages, the court expressly adopted the pertinent calculations set forth in Chilpa and

Lusk's closing brief, awarding the full amounts they had argued they were entitled to. The court also awarded each plaintiff $1,500 in statutory penalties for ACP's wage statement violations, and $1,500 in penalties for ACP's untimely provision of requested records. In total, the court awarded Chilpa $16,685.17 and Lusk $14,868.87. In November 2018, the court entered judgments in these amounts. ACP timely appealed the judgments.

### E. Attorney Fee Award

In December 2018, Chilpa filed a motion for attorney fees under section 98.2.[7] Chilpa calculated a lodestar of $43,160, based on his counsel's declaration that he had worked 66.4 hours in the trial court and that $650 was a reasonable hourly rate for his services. Chilpa argued the lodestar should be enhanced by a multiplier of 1.5, principally to compensate counsel for assuming contingent risk: "Counsel in this action took on this representation years ago in the hope there would be compensation should

---

[7] Chilpa and Lusk were represented by the same counsel throughout the Labor Commissioner proceedings (for which Chilpa's motion did not seek attorney fees) and the trial court proceedings. Section 98.2 provides: "If the party seeking review [of a Labor Commissioner decision] by filing an appeal to the superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal." (§ 98.2, subd. (c).)

they prevail. Counsel have yet to receive any payment for their work. To date, counsel has invested numerous hours that could have been devoted to other income-producing activities. Merely paying counsel at the prevailing rate for their services gives no consideration for the contingent risk and years of delay in payment that counsel assumed." Chilpa further argued the multiplier was warranted to compensate counsel for accepting this wage-and-hour representation, which would be undesirable to many attorneys because it involved neither class allegations nor high wages.

The record does not contain any opposition filed by ACP. Nor does it contain a reporter's transcript or authorized substitute concerning the April 2018 hearing on the fee motion. At the conclusion of the hearing, the court issued an order granting the fee motion. Applying an hourly rate of $550 (lower than the $650 rate requested) to counsel's 66.4 hours of work, the court calculated a lodestar of $36,520. The court applied the requested 1.5 multiplier, yielding an award of $54,780. The court's order did not state its reasoning. ACP timely appealed.

## DISCUSSION

ACP contends: (1) the trial court erred in applying California law to work Chilpa and Lusk allegedly performed in other states; (2) the court erred in adopting Chilpa and Lusk's calculations in their closing trial brief, which were assertedly unsubstantiated by the evidence; (3) the court

12

erred in awarding statutory penalties for inaccurate wage statements, because Chilpa's and Lusk's wage statements accurately reported the wages they were paid; (4) the court abused its discretion in finding Chilpa's and Lusk's testimony credible; and (5) the court abused its discretion in applying a multiplier of 1.5 in awarding Chilpa attorney fees.  We address ACP's forfeiture of its first two contentions before addressing the merits of its remaining contentions in turn.

### A. Forfeiture

Every appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  (Cal. Rules of Court, rule 8.204(a)(1)(C).)  "When an opening brief fails to make appropriate references to the record in connection with points urged on appeal, the appellate court may treat those points as *waived* or *forfeited*."  (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2021) Ch. 9-B ¶ 9:36; accord, *WFG National Title Insurance Company v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 (*WFG National*) ["Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record"].)  "Citing points and authorities filed in the trial court is not appropriate support for factual assertions in a brief.  Points and authorities are not presented under penalty of perjury.  Matters set forth in

points and authorities are not evidence." (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590.) Applying these principles, we conclude ACP has forfeited its contentions that the trial court erred in applying California law to alleged out-of-state work and in adopting calculations in Chilpa and Lusk's closing trial brief.

### *1. Application of California Law*

ACP contends the trial court erred in applying California law to work Chilpa and Lusk allegedly performed out of state. In its opening brief, ACP repeatedly asserts that Chilpa and Lusk worked outside California for extensive periods of time, but fails to support these assertions with any citation to the record. The sole exception is ACP's citation to Chilpa and Lusk's opening trial brief, which merely quoted *allegations* of out-of-state work from ACP's own trial brief. This citation is insufficient to preserve the issue for appeal. (See *Alki Partners, LP v. DB Fund Services, LLC*, *supra*, 4 Cal.App.5th at 590 [plaintiffs forfeited challenge to summary judgment on appeal by failing to support factual assertions with citations to record evidence, instead citing only their own points and authorities filed in trial court].) In their respondents' brief, Chilpa and Lusk argue -- as they argued in their closing trial brief -- that ACP "failed to adduce any evidence at trial establishing that Respondents worked for any length of time outside of California." In its reply brief, ACP fails to respond to this argument, and again fails to cite any portion of the

14

record supporting its assertions that Chilpa and Lusk worked out of state. Accordingly, we conclude ACP has forfeited its contention that the court erred in applying California law to alleged out-of-state work. (See Cal. Rules of Court, rule 8.204(a)(1)(C); Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch. 9-B ¶ 9:36.)

### 2. Calculations in Closing Trial Brief

ACP contends the trial court erred in adopting calculations in Chilpa and Lusk's closing trial brief (purportedly relying on them as expert evidence), because the calculations assertedly were "unsubstantiated by the facts." We conclude ACP has forfeited this contention, too, by failing to support it with citations to the record. (See Cal. Rules of Court, rule 8.204(a)(1)(C); Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch. 9-B ¶ 9:36.) The calculations were expressly based on evidence that had been admitted during trial, viz., Chilpa's and Lusk's timesheets and wage statements. Despite arguing on appeal that these documents did not substantiate the calculations, ACP fails to cite even a single timesheet or wage statement. It is not this court's duty to scour the record in search of support for ACP's argument. (See *WFG National*, *supra*, 51 Cal.App.5th at 894.)

We further conclude ACP forfeited this contention on an independent ground, viz., its failure to object to the calculations in the trial court. Chilpa and Lusk submitted their calculations pursuant to the court's order to submit

15

"written closing arguments" addressing, inter alia, "[c]alculation and evidentiary basis for unpaid wages." The calculations were limited to simple arithmetic, using information derived from evidence at trial and presented in charts attached to the closing brief. "[C]ounsel is usually permitted to . . . draw diagrams, charts, lists, etc. to . . . illustrate matters already in evidence. Such visual aids are not evidence. They are allowed in closing argument if they illustrate matters already of record (and are objectionable if they go beyond the record)." (Wegner et al., Cal. Practice Guide: Civil Trials & Evidence (The Rutter Group 2021) Ch. 13-B ¶ 13:85, italics omitted.) "Any objection to improper argument must be made promptly when the misconduct occurs. Otherwise, the objection is waived." (*Id*. Ch. 13-C ¶ 13:229; accord, *Regalado v. Callaghan* (2016) 3 Cal.App.5th 582, 598 ["To preserve a claim of attorney misconduct for appeal, a timely and proper objection must have been made at trial; otherwise, the claim is forfeited"].)[8] ACP raised no objection to Chilpa and Lusk's calculations, despite having ample opportunity to do so in its closing brief or in a reply (which it declined to file). We

---

[8]     The record does not support ACP's suggestion that the trial court admitted Chilpa and Lusk's calculations into evidence as expert opinion. Even had it done so, the forfeiture rule would apply. (See, e.g., *Guastello v. AIG Specialty Insurance Company* (2021) 61 Cal.App.5th 97, 105 [respondent forfeited contention on appeal that expert declaration lacked factual foundation by failing to raise objection in trial court].)

conclude ACP forfeited its appellate challenge to the calculations by failing to object, as well as by failing to support the challenge with citations to the record.[9]

### B. Wage Statements

Section 226, subdivision (a) requires an employer to furnish accurate, itemized wage statements reporting "(1) gross wages earned, . . . (5) net wages earned, . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ." (§ 226, subd. (a).) Section 226, subdivision (e) provides that an employee "suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)" is entitled to recover the greater of actual damages or statutory penalties. (§ 226, subd. (e)(1).) An employee is "deemed to suffer injury" if the employer fails to provide "accurate and complete" information as required by subdivision (a) and the employee cannot "promptly and easily determine from the wage statement alone" both: (1) the amount of gross and net wages paid; and (2) the number of hours worked at each

---

[9] To the extent ACP suggests the court erred in adopting Chilpa and Lusk's calculations because their calculated sums differed from those awarded by the Labor Commissioner, ACP ignores settled law that the Commissioner's decision is entitled to "'no weight whatsoever.'" (Chin et al., Cal. Practice Guide: Employment Litigation, *supra*, Ch. 11-J ¶ 11:1420.)

17

hourly rate, or certain other information required by subdivision (a). (§ 226, subd. (e)(2)(B)(i).)

Our Supreme Court recently clarified section 226 and its interplay with meal period requirements in *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93 (*Naranjo*).[10] There, the defendant challenged an award of wage statement penalties based on the defendant's failure to report unpaid meal period wages, arguing it could not be held liable "because these amounts were not actually paid, but were instead (illegally) withheld, and nothing in the statute requires that an employer report amounts not paid during a pay period." (*Ibid.*) Our Supreme Court deemed this argument inconsistent with the statutory text, explaining: "[S]ection 226 does not require employers to report only those amounts it deigns to pay . . . . A statement that conceals amounts earned, on the ground that they also were not paid, is not an accurate statement, and it does not comply with the statute." (*Id.* at 119.) Thus, the Court held, section 226 requires the reporting of meal period wages regardless of whether they were paid: "Section 226.7 requires an employer to pay 'one additional hour of pay' for each day in which a lawful [meal] break is not provided. [Citation.] In that situation, both that additional credited hour of work and the corresponding premium pay owed must be reported on the wage statement." (*Id.* at 120.) The Court

---

[10] Though *Naranjo* was decided before ACP filed its reply brief, ACP failed to address it.

18

further held that a failure to so report "deprives the employee of information needed to evaluate whether the payment is correct, and in so doing results in injury under the terms of the statute." (*Ibid.*)

ACP contends that because Chilpa's and Lusk's wage statements reported all paid wages -- despite failing to report unpaid meal period wages -- the court erred in awarding penalties under section 226. As explained above, however, *Naranjo* rejected an identical contention. (*Naranjo, supra,* 13 Cal.5th at 119-120.) Here, the trial court credited Chilpa's and Lusk's evidence that in each pay period they worked, they were denied at least one hour's worth of meal period wages. It is undisputed that their wage statements failed to report these unpaid wages. Under *Naranjo*, this evidence was sufficient to establish that each wage statement violated section 226, subdivision (a) in a manner deemed to have injured Chilpa and Lusk under section 226, subdivision (e). (*Naranjo*, at 119-120.) We conclude ACP has failed to show any error in the court's awards of wage statement penalties.[11]

_____

[11] In light of our holding, we need not address whether these awards were further supported by Chilpa's and Lusk's evidence of unreported overtime. Accordingly, the overtime cases on which ACP relies are inapposite. (See *Raines v. Coastal Pacific Food Distributors, Inc.* (2018) 23 Cal.App.5th 667, 676-677; *Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1142-1144; *Maldonado v. Epsilon Plastics, Inc.* (2018) 22 Cal.App.5th 1308, 1334-1337.)

### C. Credibility

"The courts of appeal do not supplant the trial courts as the original forum for consideration of the facts and evidence; nor do the courts of appeal reweigh the evidence or reassess witness credibility." (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch. 1-B ¶ 1:12.1.) "[R]eversals based on credibility of the evidence are *extremely rare*. [Citation.] [¶] Evidence will be disregarded on appeal for credibility reasons only if 'inherently improbable' or 'implausible' in the strictest sense: i.e., it must appear that the truth of the testimony was *physically impossible* or the falsity of the testimony must otherwise be apparent without resorting to inferences or deductions." (*Id.* Ch. 8-C ¶ 8:53.)

ACP contends the trial court abused its discretion in finding Chilpa's and Lusk's testimony credible because: (1) Chilpa and Lusk allegedly used drugs at job sites; (2) Lusk sustained three felony convictions prior to his employment; (3) the Labor Commissioner discredited some of Chilpa's and Lusk's testimony, including Chilpa's testimony that he had destroyed his pre-2015 employment records; and (4) Chilpa did, in fact, destroy those records, warranting an adverse inference about their contents. We discern no abuse of discretion. Again, contrary to ACP's suggestion that the court was required to defer to the Commissioner, the Commissioner's decision was entitled to "'no weight whatsoever.'" (Chin et al., Cal. Practice Guide: Employment Litigation, *supra*, Ch. 11-J ¶ 11:1420.) Although ACP

asserts in passing that Chilpa and Lusk gave "inherently incredible" testimony, it makes no attempt either to identify such testimony or to explain in what way it defied belief. We may not substitute our assessment of their credibility for the trial court's. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, Ch. 8-C ¶ 8:53.)

### D. Attorney Fee Multiplier

"If the party seeking review [of a Labor Commissioner decision] by filing an appeal to the superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal." (§ 98.2, subd. (c).) "The purpose of [section 98.2, subdivision (c)] is to promote the finality of the Labor Commissioner's awards and to discourage frivolous and nonmeritorious appeals from the Commissioner's decisions." (Chin et al., Cal. Practice Guide: Employment Litigation, *supra*, Ch. 11-J ¶ 11:1425.) The amount of an award under section 98.2, subdivision (c) is calculated pursuant to the lodestar-adjustment method: "After calculating the 'lodestar,' or total attorney hours expended multiplied by a reasonable hourly rate, the court may 'adjust the lodestar amount to take account of unique circumstances in the case. [Citations.] Some factors the court may consider in adjusting the lodestar include: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the

nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award. [Citation.]" [Citation.] "The purpose of such adjustment is to fix a fee at the fair market value for the particular action.""" (*Nishiki v. Danko Meredith, P.C.* (2018) 25 Cal.App.5th 883, 897 (*Nishiki*).) "[C]ontingent risk is '[o]ne of the most common fee enhancers.'" (Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2021) Contingent Risk May Be Used to Adjust Lodestar, § 10.41.) Where an attorney provides his or her services pursuant to an agreement that the attorney's payment is contingent upon success in the representation, an enhancement for contingent risk is "'intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees.'" (*Ibid.*) "Trial courts have considerable discretion in determining whether to apply a lodestar adjustment and the size of that adjustment: '[T]he awarding of attorney fees and the calculation of attorney fee enhancements are highly fact-specific matters best left to the discretion of the trial court.'" (*Id.*, § 10.4.)

ACP contends the trial court abused its discretion in applying a multiplier of 1.5 to the lodestar in awarding Chilpa attorney fees under section 98.2, subdivision (c). Chilpa requested the 1.5 multiplier on the principal ground that his counsel had assumed contingent risk. The record before us contains no opposition filed by ACP, no reporter's transcript or authorized substitute concerning the hearing,

and no written articulation of the court's reasoning. Thus, we must presume the court made a finding of contingent risk in support of the multiplier. (See *Nishiki*, *supra*, 25 Cal.App.5th at 895 ["If the trial court has made no findings [in awarding fees under section 98.2, subdivision (c)], the reviewing court will infer all findings necessary to support the judgment"].) ACP does not contend the court's presumed finding of contingent risk was insufficient to support the multiplier. We therefore conclude ACP has failed to show an abuse of the court's "considerable" discretion. (Pearl, Cal. Attorney Fee Awards, *supra*, § 10.41; see also *Nishiki*, at 898 ["Nishiki's counsel represented her on a contingent basis in the appeal, and the trial court noted the high quality of the legal representation on both sides. We see no abuse of discretion in applying a 1.5 multiplier to the award" (fn. omitted)).)

We reject ACP's reliance on immaterial concerns. First, ACP argues the multiplier constituted an abuse of the court's discretion because "there [wa]s no common fund, no benefit to anyone else other than the plaintiffs, and no particularly novel application of law or law to facts." None of these factors was a requirement for the multiplier. (See Pearl, Cal. Attorney Fee Awards, *supra*, Purpose and Application of Risk Enhancement, § 10.42 ["risk multipliers are not limited to cases providing great public value or involving complex legal or factual issues"].) Second, ACP complains that the court "ignore[d] the history of these employees [and] their conduct that led to their discharge."

The record does not support this complaint, as it does not reveal whether ACP raised these matters in its opposition (if any) or whether the court addressed them during the hearing. In any event, the court had no need to address Chilpa's and Lusk's termination for alleged drug use, which was irrelevant to the purposes of the fee award and its enhancement, viz., discouraging meritless appeals from Labor Commissioner decisions and compensating counsel for the market value of their services. (See Chin et al., Cal. Practice Guide: Employment Litigation, *supra*, Ch. 11-J ¶ 11:1425; *Nishiki*, *supra*, 25 Cal.App.5th at 897.)

ACP's reliance on *Serrano v Priest* (1977) 20 Cal.3d 25 is misplaced. There, our Supreme Court affirmed a fee award in part because the trial court properly considered contingent risk, and emphasized: "The 'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'" (*Id.* at 49.) ACP cites only one other case, which was rendered non-citable after the briefs were filed. (*Betancourt v. OS Restaurant Services, LLC* (2020) 49 Cal.App.5th 240, cause transferred and opinion not citable June 29, 2022.) Even had this case remained citable, it would be inapposite, as it did not address a trial court's application of an attorney fee multiplier. In sum, we conclude ACP has failed to show any error in the judgments or the attorney fee award.

24

**DISPOSITION**

The judgments and the order awarding attorney fees are affirmed. Chilpa and Lusk are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

CURREY, J.